SARAH E. FRANCIS, Respondent, *v.* ST. LOUIS TRANSFER COMPANY, Appellant.

## December 18, 1877.

1. Carriers of passengers are responsible for the natural, ordinary, and proximate consequences of their acts, but not for such as are remote and extraordinary.
2. A common carrier of passengers contracted to take plaintiff from a railroad depot to her home, but, before arriving there, set her down in the city,

within a mile of her residence, on the sidewalk of a frequented street, on which ran a line of street cars which passed within a square of her house, in daylight, on a dry, but very cold, winter day, the plaintiff being of a delicate constitution, but not sick at the time, and being warmly clad, and in company with an intimate friend. The plaintiff walked home, and in doing so contracted such a cold as permanently injured her health. *Held*, that the injury was too remote, and the contributory negligence of plaintiff too direct, to warrant a recovery for the sufferings, loss of employment, and permanent injury to the health of plaintiff; and her recovery could only be for the reasonable cost of a conveyance home, and her expenses in endeavoring to avoid exposure to the cold.

APPEAL from St. Louis Circuit Court.

*Reversed and remanded.*

S. M. BRECKINRIDGE and G. A. CASTLEMAN, for appellant: Plaintiff can recover only for damages which are the natural and proximate consequences of defendant's acts. *Clark* v. *Pacific R. Co.*, 39 Mo. 191; *Ballentine* v. *North Missouri R. Co.*, 40 Mo. 505; *Edelmann* v. *St. Louis Transfer Co.*, 3 Mo. App. 503; *Pearson* v. *Duane*, 4 Wall. 605. Plaintiff could recover only for the cost of a conveyance to take her home. — *Waters* v. *Brown*, 44 Mo. 302; *The State* v. *Powell*, 44 Mo. 436; *Brown* v. *Emerson*, 18 Mo. 103.

JOHN D. DAVIS, for respondent: For what defendant will be liable in damages in such a case as the present. — *Williams* v. *Vanderbilt*, 28 N. Y. 217; *Heirn* v. *McCaughan*, 32 Miss. 17; Sedgw. on Dam. 438, and notes; *Ransom* v. *New York & Erie R. Co.*, 15 N. Y. 415; *Chicago & Alton R. Co.* v. *Flagg*, 43 Ill. 364; *Hamilton* v. *Third Avenue R. Co.*, 53 N. Y. 25; *Jones* v. *Steamship Cortes*, 17 Cal. 487; *Robinson* v. *Flint*, 16 How. Pr. 240; *Frink* v. *Schroyer*, 18 Ill. 416; Field on Dam., sec. 667, and cases cited. Where doubt arises as to whether damages are proximate, or speculative and remote, the issue should be presented to the jury by proper instructions. — *Clemens* v. *Hunnibal & St. Joseph R. Co.*, 53 Mo. 366; *Toledo R. Co.* v. *Puidar*, 53 Ill. 447; *Perley* v. *Eastern R. Co.*, 98 Mass. 444; *Kellog* v. *Chicago & North-western R. Co.*, 26 Wis. 223. Where a party, by

his own contract, creates a charge or duty upon himself, he is bound to make it good, notwithstanding any accident by inevitable necessity, for he might have provided against it by his contract. — *Helm* v. *Wilson*, 4 Mo. 41; *Davis* v. *Smith*, 15 Mo. 467.

BAKEWELL, J., delivered the opinion of the court.

This is an action against defendant, a common carrier, to recover damages for injuries suffered by plaintiff in consequence of defendant's breach of the terms of the contract to carry plaintiff, in one of defendant's omnibuses, from a railroad depot in East St. Louis to plaintiff's residence in St. Louis. It appears from the evidence that plaintiff, at the time of the injuries complained of, was an unmarried woman, residing with her parents on Collins Street, St. Louis, about a mile north of the court-house. She was a milliner by trade, twenty-three years old at the time of the trial, and had resided in St. Louis about six years at the date of the occurrence which is the foundation of this action. For three years she worked at the millinery business, walking daily, winter and summer, from her home to the shop and back, the distance between the points being about a mile. Her health during this time was fairly good, though she was not robust. In the summer of 1872 she began to suffer from headache and pain in the side, had to give up work, and change of air was recommended by her physician. Accordingly, in July, 1872, she went to visit a relative in Davenport, Iowa. Whilst there she improved steadily in health, and was in the habit of taking exercise on foot. In December she returned home by rail, apparently quite well. She was warmly clad when she arrived at the depot in East St. Louis, on December 15, 1872. The person in charge of the omnibus of defendant at the depot told her that she would be taken home. With this understanding she got into the omnibus, and again, on the ferry-boat, she asked the agent of defendant whether the omnibus would take

her home, and was assured by him that it would; whereupon she paid her fare, fifty cents, with the last money she had about her. She was driven, with other passengers, to the Laclede Hotel, about a mile from her home. The passengers were then told that the omnibus would go no further; and all got out except plaintiff, who refused to move, saying that she had been told before paying her fare that she should be taken home. The driver said that his orders were to go no further, and that if she did not get out he would take her to the stables; and, as she still refused to descend, the driver called to her, "Damn you, get out." Being afraid that he would use force to put her out, she then left the omnibus. The day was Sunday; the hour, about half-past ten o'clock, A. M. The thermometer stood about eight degrees below the freezing point, and a strong north wind was blowing. There was no snow. Plaintiff thought it was the coldest day she ever felt. She was warmly clad, and sufficiently wrapped up. The point at which she was compelled to leave the omnibus was on the line of a street-car company, whose cars were running, and which passed within one block of plaintiff's house. Plaintiff was, at the time, in company with a young woman, an intimate friend, whom she had met on the cars. She would have had no hesitation in borrowing from her the money to pay her street-car hire. Instead of taking the street cars, she set out to walk home, with this young woman and another passenger. The young woman and the other passenger stopped, after going six squares, at a newspaper store to warm themselves. This store was on the line of the street railway which would have taken plaintiff within a square of home. She continued her walk alone, carrying a small satchel, weighing, with its contents, about six pounds. When she got home, plaintiff was completely benumbed. She could not speak. She was at once put to bed, and next day her condition was very serious. Her head was very much swollen; she suffered excruciating neuralgic pains;

the bronchial tubes were very painfully affected. She was a great sufferer for many months in consequence of this exposure; was attended by two physicians, and her health is permanently injured. She will never entirely recover from the consequences of the severe cold which she caught during her walk home. The plaintiff says that during her walk she did not see any street cars running, and that none passed her on the way. The plaintiff was not aware of the existence of the epizoötic, which was then at its height; and she did not walk home from any idea that the street cars might, perhaps, not be running, as she was not aware of any interruption to the ordinary travel in the city. These occurrences were during the prevalence of a pestilence among horses, in consequence of which defendant was unable to carry passengers as at ordinary times, and had given instructions to its employees to take no passengers beyond the hotels and the lines of street cars most convenient to their homes. The omnibus agent of defendant swears that he did not tell plaintiff that she would be carried home, but did tell her that her baggage only could be taken to her house. The defendant was carrying all baggage by means of oxen, all its horses being sick. The driver also contradicts plaintiff, saying that he used no uncivil language at all.

For the purposes of this opinion, the facts are set out according to the statements of the witnesses for plaintiff. If there is evidence to support the verdict, we have nothing to do with its weight; but if, on the facts in evidence, plaintiff is not entitled to recover, as a matter of law the verdict must be set aside. The rule is that carriers are responsible for the natural, ordinary, and proximate consequences of their acts, but not for such as are remote and extraordinary; and if the injury complained of be the direct consequence of the negligence, want of reasonable care and foresight of plaintiff, and only remotely the consequence of the acts or omission of defendant, plaintiff cannot recover.

*Clark* v. *Pacific R. Co.*, 39 Mo. 184 ; *Ballentine* v. *North Missouri R. Co.*, 40 Mo. 491. If defendant, for instance,. had agreed to take plaintiff to St. Louis, and had left her at Alton, defendant would not have been liable had plaintiff attempted to.float to St. Louis on a log, or row down in an open skiff, and been crippled in the attempt ; because the damage would have been the direct consequence of plaintiff's imprudence, and only a remote consequence of defendant's breach of contract.

How can it be said that an excruciatingly painful and protracted illness, resulting in permanent injury to the health of the passenger, is the natural, ordinary, and proximate consequence of setting down on the sidewalk of the most frequented street of a populous city, in broad daylight, on a dry, cold, winter day, a young woman, not in bad health, well and warmly clad, no stranger to, but a resident of, the town, in company with an intimate friend, in immediate proximity to a respectable hotel, and on the line of a street railway which passes close to her home? It may be said the young woman was of a delicate constitution. If her constitution was too delicate to admit of her walking home without danger, ordinary prudence required that she should take the street cars. It appears that she had no money ; but it also appears, from her own evidence, that she did not ask her companion to lend her the price of her car-tickets, and that she would have had no hesitation in doing so, had she really desired to avoid the danger of a walk home in the cold. It is quite clear, from the testimony, either that plaintiff thought she was running no risk in walking home, or else that she was willing, without any necessity, to take the risk. In either case, we do not think the plaintiff can recover. It was for plaintiff to act with ordinary prudence, and proper regard for her health. Her companions stopped on the way, in a warm store ; plaintiff might have done the same thing, and have waited for the street car, which, the evidence shows, was running at the

time, in spite of the horse disease. If her constitution, on the other .hand, was so delicate that she could not bear the ordinary and inevitable exposure of a railroad trip in winter, that is a matter for which defendant cannot be responsible.

The defendant was liable only for such actual damage as was the natural and proximate consequence of its breach of contract. Had plaintiff hired a carriage to take her home, defendant would have been liable, perhaps, to pay the cost; but if plaintiff chose to walk, and this was a dangerous exposure, this was the imprudence of plaintiff, and defendant is not liable for it.

It is not necessary to examine, with particularity, the instructions given or refused. They are quite long. For the reasons given, the judgment is reversed and the cause remanded. All the judges concur.