EUGENIA V. TROUT, Appellant, v. WATKINS LIVERY AND UNDERTAKING COMPANY, Respondent.

St. Louis Court of Appeals, May 31, 1910.

1. **LIVERY STABLE KEEPERS: Contract to Transport: Action for Breach: Question for Jury: Facts Stated.** Where a livery stable keeper agreed to transport a sick person from a hospital to her home, and after carrying her to within a few blocks of her home refused to complete the journey on account of bad roads, but offered to take her back to the hospital or to a barn where another conveyance could be obtained to complete the journey, it was for the jury to determine whether the contract was breached and whether the passenger waived her rights by refusing these offers, in view of the fact that a surrey was driven over the roads without difficulty and that her physical condition was such that it was impossible for her to endure the strain incident to an acceptance of either alternative.

2. ——: ——: ——: **Right of Passenger to Recover Fare Paid.** And where, in such a case, the liveryman retains the compensation paid for carriage, the passenger is entitled to recover it, unless she waived her right to have the contract performed.

3. ——: ——: ——: **Pleading: Petition Held to State Cause of Action Ex Contractu.** In an action against a livery stable keeper, plaintiff alleged that while she was a patient at a hospital, she contracted with defendant, a livery stable keeper, to carry her to her home for an agreed consideration which was paid by her; that after carrying her to within five or six blocks of her home, defendant refused to carry her further; that by defendant's failure to carry out his contract, plaintiff became sick and has suffered and will suffer great pain of body and mind and has incurred large expenses for medical service and nursing, all to her damage in a sum stated, and prayed for a judgment in a specified sum for actual damages for the amount paid defendant for transportation, and for a further specified sum as punitive damages. *Held,* that the petition counted entirely on the breach of a contract of carriage and not on an obligation imposed by law, and that the prayer for punitive damages should be disregarded.

4. **CARRIERS OF PASSENGERS: Relation of Carrier and Passenger Created by Contract: Choice of Remedies for Breach.** Generally speaking, the relation of carrier and passenger arises out of contract, express or implied, and the party suffering injury from a breach of it may sue on the contract or he may waive the contract and sue in tort.

5. **DAMAGES: Punitive Damages: Not Allowed for Breach of Contract: Exception.** Punitive damages are not allowed in suits on contract, except for breach of promise of marriage, where it appears the breach was made abruptly and with circumstances of humiliation.

6. **TORTS: Nature and Elements in General: Common Carriers.** As a general proposition, torts are wrongs committed wholly irrespective of contract; but a tort may arise in connection with a breach of contract by a common carrier, where the law lays an obligation upon the carrier to perform his duties in the premises, arising from the contract, and this obligation is breached and in such case there is an obligation imposed both by contract and by law upon the carrier, and the breach of the contract operates as a "tort" though entailing as well a breach of the obligation imposed by law, and the tort though independent of, is in a measure dependent on, the contract.

7. **COMMON CARRIERS: Breach of Contract: Damages: Punitive Damages Allowed When.** Punitive damages are allowed

for a breach of duty by a common carrier only when the action proceeds as for the tort in violating the obligation laid upon the common carrier by law, and not when the action proceeds for breach of contract.

8. **LIVERY STABLE KEEPERS: Not Common Carriers.** A company engaged in the livery business, which does not hold itself out to serve any and all persons, but operates only under a special contract, and deals with such persons only as it chooses, is in no sense a common carrier.

9. ————: **Degree of Care Required to Use.** A liveryman is not under the obligation to use the same degree of care that a common carrier is obliged to use, but he is only required to conduct his calling with the same degree of care and circumspection that is exercised by prudent persons engaged in the same business, and is answerable only for a breach of the slightest obligation which the law imposes upon every person who accepts a human being in bailment, which is the obligation of ordinary care.

10. **CARRIERS OF PASSENGERS: Sick Passengers: Degree of Care Carrier Required to Use.** If a common carrier accepts a passenger known to be sick or enfeebled, it is bound to exercise for his safety a degree of care commensurate with the responsibility assumed, which would be such a degree of care as is reasonably necessary to protect the passenger from injury, in view of his physical condition.

11. **LIVERY STABLE KEEPERS: Sick Passengers: Degree of Care Liveryman Required to Use.** The high degree of care required of a common carrier in the transportation of a sick passenger is not required from a liveryman in transporting such a passenger, but his obligation is to exercise ordinary care.

12. ————: ————: **Injury to Passenger by Breach of Duty: Damages: Elements of.** Where a livery stable keeper breaches a contract for the transportation of a sick passenger, he is liable only for such damages as are the natural and proximate result of the breach, but these damages include not only those which are direct, but such as the parties should have reasonably contemplated would be likely to result from a breach when the contract was made, and where the liveryman knew the passenger was sick, he will be liable for damages caused by unnecessary delay and exposure to inclement weather, resulting from his breach of his contract to transport the passenger.

13. ————: ————: ————: **Action Ex Contractu or Ex Delicto: Form of Action: Immaterial.** The obligation of a liveryman to use ordinary care in the transportation of a passenger is

not enjoined by law, but is an implied term in his contract, and in a suit for damages, caused by failure to perform his contract, he may be held responsible for failure to use ordinary care, whether the action be *ex contractu* or *ex delicto.*

14. ———: ———: ———: **Action Ex Contractu: Contributory Negligence of Passenger.** A person who has hired a liveryman to carry him between two points in a city, and sues for damages for breach of the contract, cannot recover damages which might have been avoided but for his own contributory negligence, whether the suit is on the contract or in tort.

15. ———: ———: ———: **Damages: Damages Held not too Remote: Facts Stated.** Plaintiff, while ill at a hospital, employed defendant, a livery stable keeper, to carry her to her home. Defendant was not informed that plaintiff was ill, but the driver in charge of the carriage saw on her entering the carriage that she was ill and very feeble. Defendant carried plaintiff to within five or six blocks of her home, and then because of the condition of the streets, refused to complete the journey. Plaintiff thereupon sent a message to a friend, who, after a delay of an hour, or more, came after her with an open carriage. *Held,* that the damages resulting from plaintiff's catching cold because of defendant's breach of contract, and the expenditures occasioned thereby, were not too remote for recovery, whether the action was on the contract or in tort.

Appeal from St. Louis City Circuit Court.—*Hon. Geo. H. Williams,* Judge.

REVERSED AND REMANDED.

*John E. Turner* and *Joseph A. Wright* for appellant.

(1) The cause of action was properly pleaded, it being in tort and arising from a breach of a contractual obligation. Everett v. Railroad, 214 Mo. 54; O'Brien v. Transit Company, 212 Mo. 59. (2) Without the contractual relation existing between the parties, the critical condition of the appellant's health, of itself, imposed an obligation on respondent commensurate with the dangers to which she was exposed. Depue v. Flateau (Minn.), 111 N. W. 1; Ploof v. Putnam (Vt.), 71 Atl. 189. (3) Although a livery stable keeper is not a common

carrier for hire, he is nevertheless liable for his negligence. Siegrist v. Arnot, 10 Mo. App. 197; Siegrist v. Arnot, 86 Mo. 200; Lemon v. Chanslor, 68 Mo. 340; Jaminet v. Storage and Moving Company, 109 Mo. App. 257; Livery and Undertaking Co. v. Busson, 58 Ill. App. 1; Fisher v. Tyron, 15 Ohio C. C. 541; Lewark v. Parkinson, 73 Kas. 533, 5 L. R. A. (N. S.) 1069. (4) The appellant is also entitled to recover the amount paid by her for the carriage. Lewark v. Parkinson, 73 Kas. 553, 5 L. R. A. (N. S. ) 1069; Gatzow v. Buening, 106 Wis. 1, 49 L. R. A.; Norrington v. Wright, 115 U. S. 188. (5) The court erred in refusing to admit evidence as to the plaintiff's illness, and prior and subsequent health. Walsh v. Railroad, 102 Mo. 582; Weisse v. Remme, 140 Mo. 289; Railroad v. Hyatt, 12 Tex. Civ. App. 435, 34 S. W. 677; Looran v. Railroad, 6 N. Y. Sup. 504; State v. Main, 69 Conn. 123; Boucher v. Larachelle, 68 Atl. (N. H.) 870.

*S. T. G. Smith* for respondent.

NORTONI, J.—This is an action for damages alleged to have accrued through a breach of a contract of carriage. At the conclusion of the evidence for plaintiff the court instructed a verdict for defendant and plaintiff prosecutes the appeal.

For the information of those who may care to examine it, we set forth the petition, which, omitting caption, is as follows:

"Plaintiff for her cause of action against defendant, states:

"That defendant is now and was at all times hereinafter mentioned, a corporation, duly organized and existing under the laws of the State of Missouri and engaged in the livery business and of supplying carriages for hire, in the city of St. Louis, State of Missouri.

"That on our about the 12th day of February, 1908,

148 App—40

and while plaintiff was at the Evangelical Deaconess Hospital, at the northwest corner of Sarah street and West Bell avenue, in the city of St. Louis, Missouri, where she had been under treatment for sickness, plaintiff and defendant entered into a contract by the terms of which defendant agreed in consideration of $2, then and there paid by her to defendant to convey her in a carriage from the said hospital to her home, at No. 5551 Greer avenue, in the city of St. Louis, Missouri.

"That on said date the plaintiff entered defendant's carriage thus contracted for, and defendant, by its agent and servant, the driver thereof, undertook and started to take and convey the plaintiff to her said home, and that at or near the corner of Terry and Clara avenues, in the said city of St. Louis, Missouri, the said defendant, through its agent and servant, the said driver, and while acting within the scope of his duties, stopped the horses and then and there willfully and wantonly, and in breach of its said contract, stopped said carriage and abandoned its said contract, and refused to convey plaintiff any further, and left the plaintiff at said point. That at the time of making of said contract and while the plaintiff was being driven to her home, and at the time of the abandonment of said journey, defendant knew that the plaintiff was sick, was incapable of caring for herself, on account of her illness and of the dangers to which she would be exposed by reason of the abandonment of said contract.

"That by reason of the said willful and wanton acts of the defendant, plaintiff became seriously sick and ill; that she has suffered, and will in the future suffer great pain of body and mind; she has incurred and become obligated for and will in the future incur and become obligated for large expense for medical services, medicines and nursing, all to her damage in the sum of $2200.

"Wherefore, premises considered, plaintiff prays judgment against defendant for the sum of $2200 actual

damages, and for the said sum of Two ($2) Dollars, which plaintiff alleges defendant has not refunded and is still due her and unpaid, and for the sum of $2200 as punitive or exemplary damages, to serve as a warning to others against the perpetration of like or similar acts."

It appears plaintiff, who is a widow, had recently undergone an operation for appendicitis in the Evangelical Deaconess Hospital and, having recuperated sufficiently, engaged defendant, who is a liveryman, to convey her to her home in the northwest part of the city. We gather from the testimony that plaintiff resided about fifty-six hundred west and thirty hundred north in the city of St. Louis. At the time in question, the streets in that part of the city were not sufficiently improved to prevent an accumulation of mud and pools of water during the wet season. Plaintiff underwent the operation for appendicitis in the latter part of January and had been confined in the hospital about three weeks as a result thereof when the physician in charge advised she was sufficiently recovered to return home. Upon being so advised, she caused an attendant at the hospital to communicate to the defendant livery company that she desired to be conveyed by them in a carriage to her home. At the time appointed, defendant sent one of its carriages in charge of a colored driver to the hospital and plaintiff paid him two dollars in advance for the transportation to her residence, giving the number. Plaintiff was assisted down the steps of the hospital and to the carriage by a nurse and her sister. Upon entering the carriage she personally paid the driver and he was instructed as to her destination. After having progressed to within five or six blocks of plaintiff's residence the driver stopped the carriage and notified her that it would be impossible for him to complete the journey in view of the muddy condition of the streets. It appears the carriage employed was inclosed and had swinging doors on either side. Furthermore, it was a

heavy vehicle the bottom of which approached to within fourteen inches of the ground. For a considerable distance, and indeed all of the way, except the last few blocks, the streets were solid enough but, as stated, the streets were unmade and muddy for probably six or eight blocks of the road next to plaintiff's residence. The carriage had passed through several mud holes of considerable proportions when the driver notified plaintiff and her sister that he would not complete the journey.

Having reached a point five or six blocks distant from plaintiff's home, the driver opened the door of the carriage and notified both plaintiff and her sister that because of the condition of the streets he would not further proceed and inquired if plaintiff could not walk the remainder of the way. At this time both plaintiff and her sister informed him that it was utterly impossible for her to walk in view of the enfeebled condition entailed by her sickness and the operation which had theretofore been performed. Besides so informing the driver, they suggested that he might procure another conveyance and complete the transit. On this suggestion being made, the driver left them in the carriage and repaired to a telephone where, as he said, he communicated the situation to his employer, the defendant. After having communicated with defendant over the telephone, the driver returned to the carriage and informed plaintiff and her sister that the "boss" said for him to return them to the hospital and not attempt to proceed further through the mud. This alternative being presented, both plaintiff and her sister objected and said that in view of plaintiff's sick and enfeebled condition she was not able to take the long drive back to the starting point. It seems plaintiff was suffering more or less at the time from the frequent jars and jerks received in the transit. Plaintiff and her sister again requested the driver to procure a lighter conveyance and continue the journey as it would be impossible for

plaintiff in her condition to return to the hospital. At the conclusion of the conversation, the driver repaired a second time to the telephone and consulted his employer as to what should be done in the premises. He returned in a few minutes and informed plaintiff that the "boss" said for him to bring plaintiff to defendant's livery barn and there transfer her into a storm buggy by means of which she would be conveyed to her home. Plaintiff and her sister again told the driver that the same reasons would prevent her from returning with him to the livery barn that prevailed against returning to the hospital; that is to say, that her condition was such she was unable to withstand the strain of the trip. It was insisted the driver should complete the conveyance from that point to plaintiff's home by some other means but the driver answered he couldn't do anything but take the parties back to the livery barn as suggested.

There is testimony to the effect as well that the driver slammed the door of the carriage and addressed the ladies rather roughly in closing these negotiations. It appears after having thus twice insisted that some conveyance should be furnished there to complete the transportation and the abrupt or "ill remarks" (as they are termed in the testimony) of the driver, plaintiff and her sister desisted from further efforts in that behalf and employed a boy who conveyed a message to a friend informing him of their predicament and that this friend, the family grocer, came to their relief in the course of an hour with a one-horse surrey. The parties were allowed to sit in defendant's carriage while waiting for their friend to come with the surrey. After his arrival, plaintiff was assisted into the surrey, which was an open conveyance, and conveyed to the house of her next door neighbor where she was immediately seized with a chill. The date of the occurrence was February 12th, at a season of the year when the weather was cold and moist,

though the particular day in question was a pleasant one for the season.

The evidence tends to prove that because of the delay of one hour occasioned by defendant's breach of its contract, during which time plaintiff sat in the cold carriage, and because of her subsequent exposure in being transported in an open conveyance, plaintiff caught a severe cold which resulted in a protracted illness. There is testimony, too, to the effect that plaintiff was seized with a chill immediately after being taken to the home of her neighbor and that because of her enfeebled condition such chill may have resulted from the exposure and excitement incident to the conduct of defendant's servant in breaching the contract of carriage.

From what appears in the record and briefs, we believe the court directed a verdict for defendant on the theory that plaintiff voluntarily waived her right to insist upon a completion of the contract of carriage. Indeed, on the argument at bar, we were impressed with this view, for the facts were most ingenuously stated by counsel, but upon looking carefully into the proof, it appears plaintiff insisted fully upon her right to have the contract performed and that defendant utterly refused except upon the condition that she should consent to return to the livery barn from which place a new start would be made in another conveyance. The first alternative submitted to plaintiff by the driver, after having communicated with defendant's office over the telephone, was to the effect that the driver should return plaintiff to the hospital. Of course, this in no manner would discharge it of its obligation to carry her to her residence within a reasonable time if such were possible by the exercise of ordinary diligence and that such was possible at least by procuring another conveyance is, beyond question, for it appears the groceryman had no difficulty in passing over the identical streets with a one-horse surrey. The second alternative offered to plaintiff after communication between the

driver and defendant was to the effect that plaintiff should accompany the driver to the livery barn, far removed from the point in question, and there be transferred into another conveyance by which the transit should be completed. It may be conceded, generally speaking, that the obligation of defendant required no more than the exercise of ordinary diligence on its part for the safety of the passenger and to complete the transportation within a reasonable time. But the plaintiff was sick and in a greatly enfeebled condition. This fact was obvious to the driver when the contract was made and what would amount to the exercise of ordinary care in such circumstances is quite different from what would suffice to discharge the same obligation as to a passenger enjoying sound health and a vigorous constitution. The alternative submitted to plaintiff that she should go with the driver to the livery barn amounted, no doubt, to no alternative at all in the circumstances of the case, for, as she said, it was utterly impossible for her to endure the strain incident to such an arrangement. Considering the circumstances of the case together with the fact that plaintiff insisted and continued to insist upon the driver procuring some sort of a conveyance and completing the transportation, we believe the question as to whether or not defendant breached the contract or plaintiff waived her rights with respect to the matter should have been submitted to the jury. According to the testimony, it was not until after the driver "made use of some very ill remarks; said that he couldn't do anything but take her back there, and slammed the door of the carriage" that plaintiff sought another conveyance. These facts certainly do not indicate that plaintiff voluntarily waived her rights under the contract, and the direction of a verdict for defendant may not be sustained on any other theory. Furthermore, it appears that defendant retained the two dollars paid for the carriage. Unless plaintiff waived

her right to have the contract performed, she is entitled to recover the price.

The form which the proceeding has assumed and its proper disposition in the future presents several questions so nearly approaching the line of demarcation which is maintained throughout our jurisprudence between actions *ex contractu* and actions *ex delicto* for the same wrong, that it will be essential to examine the relevant principles of law to the end the doctrines of liability may not be confused. It is argued by plaintiff that although the petition alleges a breach of the contract of carriage the suit is really in tort. This argument is material in view of the fact the petition contains a prayer for punitive damages and the character of the action presents other questions touching the measure of recovery. We have examined the authorities relied upon by plaintiff in support of this proposition and they may be put aside in so far as this case is concerned for the reason they are wholly foreign to the issue presented in the present petition. The rule of those cases is that where the suit against the carrier proceeds as for a breach of its obligation imposed by law and charges the act to have been negligently done, the force and effect of the allegation of negligence is not annihilated and destroyed by averring wilfulness and wantonness as well. No such question arises on the record here, for if we are to accept plain English words and accord to them their ordinary meaning and significance, the present petition counts entirely on the breach of a contract of carriage and in no respect upon the obligation of the carrier imposed by law. [3 Ency. Pl. and Pr., 821, 822.] Generally speaking, it is true the relation of passenger and carrier arises out of contract either express or implied, and the party suffering injury from a breach of such a contract or of the obligation which the law imposes as a sequence thereto may have his choice of remedies. If he desires he may sue for a breach of the contract of carriage. In those cir-

cumstances the suit is of course *ex contractu* and proceeds in accordance with the principles of contract law. On the other hand, he may waive the contract and sue in tort for the wrongful breach of the obligation imposed by law. In those circumstances, the suit is of course *ex delicto* and proceeds in accordance with the law of torts. [Canady v. United Rys. Co. of St. Louis, 134 Mo. App. 282, 114 S. W. 88; 2 Hutchinson on Carriers (3 Ed.), sec. 962; 1 Cooley on Torts (3 Ed.), 155, 156, 159.] It appears plaintiff saw fit to waive her right to sue in tort and proceeded as for a breach of contract. A mere reading of the petition evinces such to be the fact beyond question. This being true, the prayer of the petition for punitive damages is to be disregarded, for exemplary or punitive damages are not allowed in suits on contracts except for breach of promise of marriage, when it appeals the breach was made abruptly and with circumstances of humiliation. Indeed, the law is not concerned with the motive of a party for breaching a contract as it intends only to alleviate the circumstances of each case on the principles of compensation for the loss. [ 2 Sedgwick on Damages, 370; 2 Sedgwick on Damages, secs. 601, 602, 603; 8 Am. and Eng. Ency. Law (2 Ed.), 632 to 635, 639; 2 Sutherland on Damages (3 Ed.), sec. 390.] It is sometimes asserted that there are other exceptions besides breach of promise of marriage which permit a recovery for punitive damages with respect to breaches of contract but, as said by Mr. Sutherland, this is in no degree accurate. Such cases are in fact actions brought upon the theory that legal rights growing out of a contract have been violated or legal duties resting thereon neglected. Indeed, those actions are usually such as proceed for a tort dependent upon contract, as for a breach of the obligation of the carrier imposed by law which may exist wholly irrespective of a contract, and in no sense for a breach of the contract itself as in this case. [1 Sutherland (3 Ed.), 98, 99.] As a general proposition torts are con-

sidered to be wrongs wholly irrespective of contracts. [1 Cooley on Torts (3 Ed.), 3.] But there are cases where the tort comes into being as a result of the breach of a contract, as, for instance, where there is a contract of carriage with a common carrier and it is breached. In such circumstances the breach of contract gives rise to the tort, not, however, because it was wrong to breach the contract, but only because the law laid an obligation upon the carrier to perform his duty in the premises and he had breached the obligation imposed by law which in the particular instance arose from the relation created by contract. In such cases where there is an obligation imposed both by contract and by law upon the carrier and the breach of the contract operates a tort through entailing as well a breach of the obligation imposed by law, it is sometimes said the tort, though independent of, is, in a measure, dependent upon the contract. It is in this view generally speaking that punitive damages are allowed as for a tortious breach of the contract but in truth and in fact it amounts to no more than an allowance of such damages in proper circumstances for a breach of the obligation imposed by law. [1 Sutherland on Damages, sec. 99; Addison on Torts (8 Ed.), 15, 16.] For a further distinction with respect to torts independent of and yet in a measure dependent upon contracts, see Shirley v. Waco Tap. Ry. Co., 78 Tex. 131, 144, 145, 10 S. W. 543; Rich v. New York Central, etc., R. Co., 87 N. Y. 382. The theory of the law as to common carriers in this regard is said by Mr. Sedgwick to be that the case involves more than the mere breach of contract but operates a tort as well. [2 Sedgwick on Damages, sec. 859.] However, even in such cases, punitive damages are allowed only when the action proceeds as for the tort and not when it proceeds, as in this case, for breach of contract.

Defendant, in this case, is in no sense a common or public carrier of passengers but, on the contrary, is the keeper of an ordinary livery stable. It does not hold

itself out to serve any and all persons whomsoever, but, instead, operates under a special contract and deals with such persons only as it chooses, identically as does the private carrier for hire in respect of goods. From this it is obvious that the obligation which attends its calling is not that of high care which obtains as to the public or common carrier of passengers. Of such livery stable keepers Mr. Hutchinson says:

"Ordinarily, livery stable keepers, engaged in the business of letting for hire teams and vehicles, either with or without drivers, are not carriers of passengers within the legal meaning of that term. They do not hold themselves out as undertaking for hire to carry indiscriminately any person who may apply. Those who hire their vehicles are not necessarily restricted to vehicles or drivers designated by the proprietor, but may, in a measure, protect themselves by selecting the particular horse or driver they wish to hire. The duties and obligations of carriers of passengers, are, therefore, not applicable to mere livery stable keepers." [1 Hutchinson on Carriers (3 Ed.), sec. 96].

Although the hackman and stage coach proprietor are regarded as public carriers and answerable for high care as such, this rule does not obtain with respect to an ordinary liveryman. [Lemon v. Chanslor, 68 Mo. 340; Leward v. Parkinson (Kan.), 85 Pac. 601, 5 L. R. A. (N. S.) 1069; see also Cravens v. Rodgers, 101 Mo. 247, 14 S. W. 106.] Liverymen are required to conduct their calling with the same degree of care and circumspection which is exercised by prudent persons engaged in the same business and are answerable only for a breach of the slightest obligation which the law imposes upon every person who accepts a human being in bailment; that is, the obligation of ordinary care. [Siegrist v. Arnot, 10 Mo. App. 197; Siegrist v. Arnot, 86 Mo. 200; Stanley v. Steele, 77 Conn. 688; Payne v. Halstead, 44 Ill. App. 97; Copeland v. Draper, 157 Mass. 558; Erickson v. Barber Bros., 83 Ia. 367.] From this

it appears that besides undertaking to convey plaintiff to her destination within a reasonable time the contract of carriage entailed an obligation on defendant to exercise ordinary care for her safety during the transit. Indeed, even a private person who undertakes to transport others voluntarily, without either contract or recompense, is required to exercise ordinary care for their safety, for because of the character of the bailment the law permits nothing less. [Siegrist v. Arnot, 86 Mo. 200; Siegrist v. Arnot, 10 Mo. App. 197.] In speaking of the duty of private individuals with respect to carrying persons without a contract, Judge Cooley says:

"If a person volunteers, through himself or his servants, to transport others by modes or under circumstances calculated to expose them to danger, he should be held to assume the duty of care in so doing, and the duty to make compensation, in case he should become the instrument of a negligent injury to his charge." [1 Cooley on Torts (3 Ed.), 242.]

Furthermore, it has been declared by courts of high authority that the precepts of humanity alone, unattended by any other obligation whatever, enjoins the duty of ordinary care upon one knowing the condition of a sick person to look out for the safety and welfare of those who are thus enfeebled. [Depue v. Flateau (Minn.), 111 N. W. 1; Ploof v. Putnam (Vt.), 71 Atl. 188, 189.] And the rule obtains with respect to common or public carriers of passengers to the effect that if the carrier accepts a passenger known to be sick or enfeebled, it is bound to exercise for his or her safety a degree of care commensurate with the responsibility assumed and that is such care as is reasonably necessary to protect the passenger from injury, in view of his or her physical condition. [2 Hutchinson on Carriers (3 Ed.), sec. 992; Mathew v. Wabash R. Co., 115 Mo. App. 468, 78 S. W. 271, 81 S. W. 646; Hanks v. C. & A. R. Co., 60 Mo. App. 274; Young v. Mo. Pac. R. Co., 93 Mo. App. 267; see also Phillips v. St. Louis & S. F.

R. Co., 211 Mo. 419, 111 S. W. 109.] But the same high degree of care is not required from the liveryman. His obligation is to exercise ordinary care in the circum-stances of the case identically as is that of a carpenter, a builder, a physician or others engaged in trades or professions which imply and require a measure of skill. There can be no doubt defendant's driver knew the con-dition of plaintiff at the time the contract of carriage was breached even though the fact that she had re-cently had an operation performed was not communi-cated at the time it was made, for it appears that both plaintiff and her sister repeatedly told the driver of her condition when he requested her to walk the sev-eral blocks to her home. If this suit were in tort, it would be competent to consider the rights of the par-ties from the standpoint of the knowledge which de-fendant's driver had of plaintiff's condition at the time he refused to complete the transportation. But as it is in contract, the defendant is liable to respond only for such damages as are the natural and proximate result of the breach. This includes besides direct damages such as the parties should have reasonably contemplated would be likely to result from a breach when the con-tract was made. [3 Hutchinson on Carriers (M. & D.) (3 Ed.), 1358; Hadley v. Baxendale, 9 Exch. 341.] However, though the fact plaintiff had recently under-gone an operation was not then communicated, it con-clusively appears that defendant's agent, the driver, knew she was sick and enfeebled when the contract of carriage was made, for the evidence is, that plaintiff was unable to walk alone and the nurse and her sister as-sisted her down the hospital steps into the carriage in the very presence of the driver. In view of these facts, the obligation of defendant to exercise ordinary care for plaintiff's safety must be construed as though defendant knew its passenger was a sick lady and susceptible to the inclemency of the weather, especially when accent-uated by circumstances of excitement which attended

the act of the driver in roughly speaking to her and slamming the door of the carriage.

But it is said the question of ordinary care is beside the case for the reason the suit is on the contract and not on the obligation the law enjoins. This suggestion is inaccurate in principle in that it assumes a false premise as though there is in the relation here involved an obligation imposed by law in the true sense of that term. In the case of a private carrier, there is no obligation imposed by law as obtains on the custom of the realm with respect to the public or common carrier, for such private carriers operate only in accordance with their contract of hire, whereas the public carrier owes a public duty by law which must be performed in favor of one and all alike. However, there is a term in every contract of even a private carrier which is implied by the law to the effect that he shall exercise ordinary care for the safety of his charge. Instead of this being the obligation imposed by law in the sense of those words as applied to public carriers, it is but one term (*i. e.,* an implied term) of the contract which the carrier entered into with the plaintiff. Such implied term of the contract, as contradistinguished from the obligation of the law alone may, of course, be invoked in a suit on the contract, for it is one of the matters stipulated for therein though not expressed in words. [State ex rel. v. Laclede Gas Light Co., 102 Mo. 472, 14 S. W. 974, 15 S. W. 383; 22 Am. St. Rep. 7, 8, 9; 7 Am. and Eng. Ency. Law (2 Ed.), 91; 15 Am. and Eng. Ency. Law (2 Ed.), 1095, 1096.] It is entirely clear that the contract in this instance as much required the defendant to exercise ordinary care for plaintiff's safety as it enjoined the duty to make the transit in a reasonable time or make it at all for that matter. In so far as the obligation of the contract is concerned, the form of the remedy is immaterial, for whether the actions proceeds *ex contractu* or *ex delicto* the rights of the parties stipulated or assured in the contract are to be determined

by the same standard. The form of the action concerns
the remedy only and in no sense affects the legal obliga-
tion of the parties. It is, therefore, clear that though
the suit is in contract, the defendant must respond
thereon in accord with all of the terms of its undertak-
ing, either express or implied. But as before suggested,
though the form of the action is unimportant as to the
scope of the contract as a general rule the measure of
damages, or scope of recovery, is more extensive when the
action proceeds in tort. In other words, when the suit
proceeds as for a breach of the contract the pertinent
rules for admeasuring the damages confine the relief
to narrower limits. [1 Hutchinson on Carriers (M. &
D.), sec. 204; Dale v. Hall, 1 Wilson 281; Dyke v. R. Co.,
45 N. Y. 113, 6 Am. Rep. 43.] An investigation of this
question reveals that the very first case reported in the
books where the action assumed the form of one on con-
tract against a public carrier and sought damages for
the breach, instead of proceeding in tort on the custom
of the realm, the court considered and gave judgment for
damages upon the contract as though it was defend-
ant's duty to exercise ordinary care in the premises.
Indeed, it is said in that case though the suit was on
the contract and the plaintiff offered no affirmative proof
of negligence, the defendant's failure to exercise due
care in the circumstances of the case should be affirmed
for the reason the law supplied such an obligation in
the contract. See Dale v. Hall, 1 Wilson 281; see also
Evansville, etc., R. Co. v. Kyte, 6 Ind. App. 52. It is
true that the case differs from this in the fact that it pro-
ceeded against a common carrier, on whom the law im-
posed an obligation on the custom of the realm be-
cause of the nature of the calling, but nevertheless the
action was in contract as here and in this case the law
supplies the same obligation in a different form by incor-
porating it as an implied term of the contract instead of
imposing it as an incident to the calling, as in the case
of a public carrier.

The fact the petition avers a willful and wanton breach of the contract is immaterial in so far as the right of the plaintiff is concerned, for defendant having assumed the contractual obligation to exercise ordinary care for her safety, she should be recompensed for such injuries as naturally result from the breach, or such as were within the contemplation of the parties at the time the contract was made though the breach was either designedly done with wantonness or because of sheer carelessness. If plaintiff's rights under the contract were violated, it is wholly unimportant to her whether defendant was negligent and remiss in the performance of its duty from inattention or whether it intended the result and acted willfully to that end. It has recently been decided by the Supreme Court that a breach of the obligation to exercise ordinary care may be shown under an allegation of willfulness and wantonness as well as under one of negligence. See Everett v. St. Louis & S. F. R. Co., 214 Mo. 54, 84, 85, 112 S. W. 486.

But it is said that to consider the question of defendant's failure to exercise ordinary care for this sick lady passenger will as a correlative thereof permit the introduction of evidence tending to prove contributory negligence on the part of plaintiff and thus introduce an anomaly to the effect that contributory negligence may be put forward as a defense in a suit on contract. In answer to this, it may be said that a precedent obtains in this court on facts very similar to these before us where in a suit for the breach of a contract of carriage the plaintiff's recovery was denied on the ground of her contributory negligence. See Francis v. St. Louis Transfer Co., 5 Mo. App. 7. The Supreme Court of Massachusetts, too, seems to entertain the view that in suits *ex contractu* for the breach of a contract of carriage the plaintiff's negligence contributing to the injury may be shown in defense. See Ingraham v. Pullman Co., 190 Mass. 33. The thought seems to run throughout the authorities that where the suit is either in contract or in

tort for damages entailed because of the carrier's failure to complete the transportation the conduct of the plaintiff proximately contributing to the injury should be considered. Mr. Hutchinson says:

"Where, therefore, the carrier has wrongfully set the passenger down short of his destination or has carried him beyond it, and has thereby imposed upon him the necessity of getting to his destination by other means, the carrier must respond, whether the action be brought for the breach of the contract or for the tort, if the passenger, while in the exercise of reasonable care and prudence for his safety, has received an injury while seeking to extradite himself from the situation in which the carrier has thus wrongfully placed him." [Hutchinson on Carriers (3 Ed.) (M. & D.), sec. 1429.]

The thought to be gleaned from this expression as to the carrier's liability when the action proceeds either in contract or tort is that if the injury results because of the negligence of the plaintiff in contributing thereto no recovery should be allowed. As before stated, the case of Francis v. St. Louis Transfer Co., 5 Mo. App. 7, heretofore cited, was a suit as for a breach of the contract of the carrier to complete the transit undertaken by transporting plaintiff to her home, and the right of recovery was denied as for her contributory negligence in unnecessarily exposing herself to inclement weather. The authority is directly in point and a precedent of our own on this feature of the case.

But it is suggested the action being on the contract and not in tort, the damages occasioned because of plaintiff's catching cold, etc. are remote and not recoverable in an action as for a breach of the contract. The case of Hobbs v. London, etc., R. Co., L. R. 10, Q. B. 111, is relied upon in support of this argument. That case, though an action in tort, was treated by the court as if it proceeded for a breach of contract, and it was ruled that the consequential damages prayed for on account

148 App—41

of sickness and medical attention entailed from the fact that the passenger was required to walk and caught cold after the contract of carriage was breached was remote. It may be said, however, from all that appears that the passenger in the instance there involved was in sound health at the time the contract was made and nothing indicated that such damages were reasonably probable to have been within the contemplation of the parties when entering into the contract. But be this as it may, the rule of that case has been departed from in England and its doctrine repudiated in McMahon v. Field, 7 Q. B. Div. L. R. 591. Though some courts have adopted its doctrine in America, others have declined to do so. In fact it is repudiated and said to be unsound by the leading text writers on the subject as will fully appear by reference to Sedgwick on Damages, sections 867, 868, 869, 870, 871. Mr. Hutchinson also suggests its infirmity and says that in most of the American states its doctrine has been restricted to the extent that it is not applied if the breach of the contract to carry in itself amounts to a tort. [Hutchinson on Carriers (3 Ed.) (M. & D.), sec. 1429.] However, as to this matter, the Hobbs case may be distinguished from the one now in judgment for the reason that here it clearly appears the plaintiff was a sick lady and so known by both parties to be at the time the contract of carriage was entered into. It is true she omitted to inform the driver before going into the carriage that she had recently been operated on for appendicitis but it appears he was present when the nurse and her sister aided her from the hospital door into the carriage at which time she paid him the fare. Plaintiff's sick and enfeebled condition at the time the contract was made was obvious to the driver and this fact invokes the rule of Hadley v. Baxendale, 9 Exch. 341. This fact, too, distinguishes plaintiff's case from that of Francis v. St. Louis Transfer Co., 5 Mo. App. 7, in which the court remarked plaintiff's damages were too remote for a re-

covery in an action on contract. In that case it appears
though the plaintiff was of delicate constitution that
she was in good health and nothing indicated to the car-
rier that special damages on account of the passenger
contracting cold might ensue from a breach of the con-
tract. The rule of Hadley v. Baxendale was not con-
sidered by the court in that case for the reason the facts
did not invoke it. However, when the action is either
in contract or tort, the sound rule requires the wrong-
doer to answer for the natural and proximate results of
his acts and it would seem plaintiff's grievance is a
natural and proximate result of the breach of the con-
tract in the circumstances above adverted to. [8 Am.
and Eng. Ency. Law (2 Ed.), 583; 2 Sedgwick on Dam-
ages, 871; 3 Hutchinson on Carriers (3 Ed.), sec. 1358;
McMahon v. Field, 7 Q. B. Div. L. R. 591.] But if, as
said, the major portion of the damages sought to be
recovered are special and consequential, in that they re-
sult from a sickness contracted and expenditures occa-
sioned as a result of the exposure to which plaintiff
was subject on account of the breach of the contract,
a recovery may be had in accordance with the estab-
lished rule for admeasuring damages for breach of con-
tract. The rule of Hadley v. Baxendale requires that
the facts relied upon to support the consequential dam-
ages must be communicated at the time of making the
contract, to the end that it may appear the parties held
such consequences as within their reasonable contem-
plation. [Hutchinson on Carriers (3 Ed.) (M. & D.),
sec. 1358.] It appearing defendant's driver knew plain-
tiff was in a sick and enfeebled condition of health at
the time she paid him the two dollars for her transporta-
tion home, it may be declared that the parties essen-
tially contemplated the transportation of a passenger
who was susceptible to the baneful effects of exposure
in inclement weather as well as to excitement incident
to unkind words. Even if such damages are not the nat-
ural and probable result of a breach of the contract to

carry a sick woman in inclement weather, the proof re-
ferred to satisfies the rule of Hadley v. Baxendale, 9
Exch. 341 for the prima facie purposes of the case and
it should be proceeded with accordingly. [Sedgwick
on Damages, sec. 871; Hutchinson on Carriers (3 Ed.),
sec. 1421.]

The judgment should be reversed and the cause
remanded. It is so ordered. All concur.