CHARLES T. MANTER, Respondent, v. GEORGE N. TRUESDALE, Appellant.

St. Louis Court of Appeals, April 3, 1894.

1. **Contract**: MISREPRESENTATION BY SILENCE. The general rule is that mere silence can not be treated as a representation; but a party may put himself in a position where he is bound to speak.

2. ———: ———: ACTION FOR DAMAGES. The plaintiff agreed to purchase land from the defendant at a fixed price. A stipulation was annexed for the liquidation of deferred payments through a loan from a building association. Its effect was to materially increase the amount payable by the plaintiff. There was evidence that he acted in the belief that this would not be the case, and that the defendant knew of this impression on his part and of its falsity. *Held* that, under the circumstances thus shown, it was the duty of the defendant to speak, and that he was answerable in damages for a failure to do so.

3. **Damages**: WHEN NOT SPECULATIVE. The evidence in this cause showed that building association stock would, in all reasonable probability, mature in one hundred and five or one hundred and eight months. *Held*, that damages assessed upon the basis of this approximation were not speculative.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL D. FISHER, Judge.

REVERSED AND REMANDED.

*Robert M. Foster* for appellant.

(1) The evidence is insufficient to warrant a recovery. *Austin v. Ober*, 26 Mo. App. 665; *McBeth v. Craddock*, 28 Mo. App. 380; *Fenwick v. Bowling* 50 Mo. App. 521; *Hodges v. Terry*, 28 Mo. 103; *Peers v. Davis*, 29 Mo. 184; *Dulaney v. Rodgers*, 64 Mo. 201; *Caldwell v. Henry*, 76 Mo. 260; *Jones v. Railroad*, 79 Mo. 92; *Walsh v. Morse*, 80 Mo. 568. The action of deceit requires the clearest proof to sustain it. *Holland v. Anderson*, 38 Mo. 89; *Langdon v. Green*, 49 Mo. 363. (2) The court erred in fixing the measure of damages in plaintiff's instruction number 1. Defendant's instruction number 3, under all the facts and circumstances of the case, should have been given. When the testimony is clear and conclusive, an instruction may assume the facts sworn to. *Fields v. Railroad*, 80 Mo. 206; *Mauerman v. Siemerts*, 71 Mo. 105; *Barr v. Armstrong*, 56 Mo. 377.

*S. B. Jones & Williams* for respondent.

The fact that Manter omitted to make inquiry or examine into the representations of Truesdale, will not relieve Truesdale of liability for any false representations made by him concerning the subject of the sale. *Caldwell v. Henry*, 76 Mo. 254; *Union Nat. Bank v. Hunt*, 76 Mo. 444; *Wannell v. Kem*, 57 Mo. 478; *McBeth v. Craddock*, 28 Mo. App. 392.

BIGGS, J.—The plaintiff purchased from the defendant a house and lot, and the present action for damages has grown out of that transaction. The contract between the parties reads:

"St. Louis, Nov. 4, 1889.

"Received from C. T. Manter one thousand dollars as part payment of house and lot, No. 4248 Morgan

street, in the city of St. Louis, Mo. Lot thirty feet wide; runs back to alley. Price of house and lot to be six thousand dollars, payable at the rate of sixty-two dollars a month without interest on the rates given. Said house to be finished further, the cellar to be cemented complete, and repaired where plastering is off in one of the rooms. Possession given at once, with warranty deed with clear title in every respect; with laundry floor in laundry; connect water pipe on east side with sewer.

"[Signed] GEORGE N. TRUESDALE & Co.

"PR. JOHN M. FAY."

Written across the face of the writing in red ink is the following: "Accepted. Geo. N. Truesdale."

"P. S. The balance, sixty-two dollars per month, is to be paid into a building association; that is, the party is to buy thirty-one shares of Clerks and Mechanics' Building and Loan Association stock, and be governed by said association's laws as regards the time required to pay off said loan.

"[Signed] GEO. N. TRUESDALE."

The plaintiff's cause of action is thus stated in his petition:

"Plaintiff for his cause of action states that heretofore, to wit, on the fourth day of November, 1889, he purchased of the defendant a house and lot, situated in the city of St. Louis, state of Missouri, known as No. 4248 Morgan street, for the price and sum of $6,000, and that he then there paid the defendant one thousand dollars ($1,000) on account of said purchase money; that the balance of said purchase money, to wit, the sum of five thousand dollars ($5,000), was to be paid in monthly installments of sixty-two (62) dollars per month, without interest; that afterwards, on the eighth day of November, 1889, and before the delivery by defendant to the plaintiff of the deed for

said premises, the plaintiff paid the defendant on said purchase price the further sum of eleven hundred and fifty dollars ($1,150), leaving a balance owing from the plaintiff to the defendant, on account of said purchase money, of thirty-eight hundred and fifty dollars ($3,850), which, according to the contract between them, was payable at the rate of $62 per month thereafter, without interest.

"Plaintiff further states that he then and there offered to execute said notes for said balance of said purchase money in accordance with the said contract, and to give a deed of trust on said property to secure the same; but the defendant represented to the plaintiff that he, the defendant, would execute a proper deed of trust on said property to secure said balance of the purchase money of thirty-eight hundred and fifty dollars ($3,850), and thereupon convey said property to plaintiff subject to said incumbrance of $3,850; that the plaintiff relied wholly upon the defendant to carry out said agreement in good faith, and to put said incumbrance on said property for the said sum of $3,850 as aforesaid; that thereupon defendant conveyed said property to the plaintiff by a general warranty deed for the express consideration of said sum of six thousand dollars ($6,000), reciting in said deed that said conveyance was subject to a deed of trust thereon to the Western Mutual Building and Loan Association, without stating how much said incumbrance was.

"Plaintiff further states that the defendant wrongfully, and unlawfully, and in violation of his contract with this plaintiff, and without the knowledge or consent of this plaintiff, on the day of the transfer of said property by defendant to this plaintiff, and before said transfer, incumbered said property by a deed of trust in the sum of sixty-two hundred dollars ($6,200) to the

Western Mutual Building and Loan Association, and then and there paid on said loan the sum of ten hundred and ninety-five dollars, and fifteeen cents ($1,095.15), leaving said incumbrance to stand on said property for the sum of fifty-one hundred and four dollars and eighty-five cents ($5,104.85).

"Plaintiff further states that said conduct of the defendant was wrongful and unlawful, and in violation of defendant's contract with the plaintiff as aforesaid; and that said incumbrance should have only been for the sum of $3,850.

"Plaintiff further states that he is paying, and will be compelled to pay, said full sum of fifty-one hundred and four dollars and eighty-five cents ($5,104.85) to said Western Mutual Building and Loan Association to clear his property from said incumbrance.

"Plaintiff further states that, by reason of the wrongful conduct of the defendant as aforesaid, he has been damaged in the sum of twelve hundred and fifty-four dollars and eighty-five cents ($1,254.85), for which sum he prays judgment with interest and costs of suit.'"

The defendant's answer, after specifically denying the allegations of misconduct on his part, admitted the execution of the deed for $6,000, subject to a deed of trust in favor of the Western Mutual Building and Loan Association, and alleged that the plaintiff knew, and was informed at the time, of the exact amount of said deed of trust, the amount of the monthly installment and the number of installments which he would probably have to pay before the stock matured. The answer contained the further averments "that plaintiff purchased said house and lot, and agreed to make said monthly payments in accordance with the rules and regulations of the Clerks and Mechanics' Building and Loan Association, and before said sale was con-

summated did substitute the Western Mutual Building and Loan Association in place and lieu thereof; and, if he paid the said sum of eleven hundred and fifty dollars ($1,150), or any other sum, that it was for the purchase and assignment to him of thirty-one (31) shares of the capital stock of the Western Mutual Building and Loan Association, and that he accepted his pass book for said shares in said association and is paying, and has paid for more than twenty months, the monthly installments due on said shares to said association in accordance with its rules and regulations. The defendant further alleges that the value of said shares in said building association, when surrendered, are a proper credit upon said deed of trust, but that he had no knowledge or information sufficient to form a belief as to whether or not the amount due on said deed of trust is $3,800, or any other sum."

A trial resulted in a verdict and judgment for the plaintiff for the sum of $1,200. The defendant has appealed.

The defendant insists that the plaintiff's evidence is insufficient to make out a cause of action against him. This assignment requires a review of the evidence.

It was conceded that the body of the contract and the acceptance by the defendant were both written on November 4, but there is a direct conflict in the evidence as to when the postscript was written. The plaintiff testified substantially that he purchased the property on the fourth day of November, 1889, upon the terms stated; that he paid $1,000 of the purchase money on that day, and that he received the contract with the written acceptance thereon; that the deed was not made until November 9, at which time, and prior to its execution, the defendant represented to the plaintiff that, if he would pay $1,150 more money, he

could save $130 on the purchase, and that thereupon he paid to the defendant the additional sum; that the defendant further represented .that he had negotiated a loan from a building and loan association, that he had executed or would execute to the association a mortgage on the property for the amount of the loan; that the property would be conveyed to the plaintiff subject to the proposed incumbrance; that under this arrangement the plaintiff would have to pay the building and loan association instead of the defendant; and that at that time the postscript was added.

The plaintiff's evidence also tended to show the following facts: That the negotiations with the Western Mutual Building and Loan Association were conducted solely by the defendant, and that the plaintiff was not advised of the amount of the loan, or the amount which he would be required to pay in order to liquidate it; that, in order to effectuate the loan, the defendant purchased in his own name thirty-one shares of the capital stock of the association, and that he negotiated a loan of $6,200 thereon, and to secure it executed, on the ninth day of November, a deed of trust on the house and lot in question for that amount; that under the rules and by-laws of the association a loan is paid off in monthly dues and interest until the maturity of the stock upon which the loan was had; that under this plan it is estimated that the stock of a building and loan association will mature in from one hundred to one hundred and fourteen months according to its management; that, under the management of the Western Mutual Building and Loan Association to the date of the trial, its stock would probably mature in one hundred and five or one hundred and eight months; that at the date of the loan the stock was thirty-one months old, which would require the payment of at least seventy-four installments of $62

each, in order to relieve the property of the incumbrance placed on it by the defendant; that, under the most favorable view, the property through the manipulations of the defendant would eventually cost the plaintiff $6,738. The plaintiff's evidence also tended to prove that, at the date of the trial, he had paid forty installments amounting to $2,460, and that to immediately clear the property of the mortgage he would be compelled to pay to the building association the additional sum of $3,333.12, which would make the property cost the plaintiff $7,943.12.

On the other hand, the defendant's evidence tended to prove that the postscript was written on the fourth day of November; that the payment of $1,150 made by plaintiff was used by defendant in purchasing the stock, of which plaintiff was fully advised at the time, and that the defendant fully explained to him the nature and conditions of the loan from the association, and the time required for its liquidation, and the amount that would have to be paid for that purpose.

We do not deem it a matter of any consequence when the postscript was written. The plaintiff acquiesced in it, and unless he has been overreached in the transaction by reason of fraudulent representations or undue concealments on the part of the defendant, he has no cause of action. Whether the contract be read with or without the postscript, it shows that the defendant sold the house and lot to the plaintiff for $6,000, $1,000 of which was paid in cash, and the balance was to be paid in monthly installments of $62, without interest. The evidence leaves no doubt that the plaintiff voluntarily assumed to pay the balance due on the property through the building and loan association; and the only question is whether the defendant, who is secretary of the association and who arranged all of the details of the loan, misrepresented

or concealed from the plaintiff the conditions of the loan, or the amount of money which, under the rules of the association, would be required to liquidate the debt.

It is urged by counsel that the plaintiff in his testimony fails to state that the defendant actually misrepresented any material fact connected with the loan. That is true, but his testimony did tend to prove that he was entirely ignorant of the business methods of building and loan associations, and that the defendant, who was secretary of the Western Mutual Building and Loan Association, failed to advise him of the amount of the loan or the number of installments which he would be require to pay, notwithstanding that he knew that plaintiff supposed that he would only be required to pay the balance due on the property, to wit, $3,850.

The general rule is that mere silence can not be treated as a representation, but a party may put himself in a position where he is bound to speak. The supreme court in the case of *McAdams v. Cates*, 24 Mo. 223, in discussing this subject, said: "Although many duties must be left by law to the honor and conscience of individuals, the public morals require us to lay down and enforce such rules, in relation to the business affairs of men, as will secure fair and honorable dealing, as far as this is practicable, consistently with the freedom of individual action and the interests of commerce. If, in a contract of sale, the vendor knowingly allow the vendee to be deceived as to the thing sold in a material matter, his silence is grossly fraudulent in a moral point of view, and may be safely treated accordingly in the law tribunals of the country. Although he is not required to give the purchaser all the information he possesses himself, he can not be permitted to be silent when his silence operates virtually as a fraud. If he fails to disclose an intrinsic circum-

stance that is vital to the contract, knowing that the other party is acting upon the presumption that no such fact exists, it would seem to be quite as much a fraud as if he had expressly denied it, or asserted the reverse, or used any artifice to conceal it, or to call off the buyer's attention from it."

In *Reynell v. Sprye*, 1 De Gex M. & G. 708, Lord Justice CRANWORTH says: "Once make out that there has been anything like deception, and no contract resting in any degree on that foundation can stand."

Mr. Bigelow in his treatise on the law of frauds says: "When the law attaches consequences to silence, it does so, it seems, upon a footing of a breach of duty to speak."

In the case at bar the defendant procured the stock in the association, and negotiated the loan thereon in his own name. If the plaintiff was ignorant of the fact that the loan increased his liability beyond the balance due for the house and lot, and the defendant knew or had good reason to know this, then the law, under the circumstances, imposed the duty on the defendant to disclose that fact to the plaintiff, and, if he failed in this, it was tantamount to an undue or fraudulent concealment, for which he must answer in damages. It is no answer to say that the plaintiff failed to make an independent investigation. The defendant undertook to transact the entire business with the association. He bought the stock in his own name, and he gave the deed of trust to secure the loan. If the plaintiff's liability was increased by reason of the loan, he had a right under the circumstances to expect that the defendant would inform him of the fact. *Wannell v. Kem*, 57 Mo. 478.

At the instance of the plaintiff the court instructed the jury as follows:

"The court instructs the jury that, if they believe from all the evidence that on the fourth day of November, 1889, that the defendant agreed to sell to the plaintiff a house and lot, No. 4248 Morgan street, in the city of St. Louis, Missouri, for the sum of $6,000, $1,000 cash, and the balance in monthly payments of $62 each, without interest; and if you further believe from the evidence that the plaintiff paid said sum of $1,000, and, before the execution of the deed by defendant to plaintiff for said property, the defendant placed a mortgage on said property to the Western Mutual Building and Loan Association for the sum of $6,200, to be paid off or liquidated as provided for in the rules, regulations and by-laws of said association; and if you further believe from the evidence that the defendant falsely represented to plaintiff that the said mortgage was for the sum of $5,000 only, and that plaintiff relied on such representation, and was thereby induced to believe that said mortgage was for no greater sum, and thereby accepted the deed from defendant for said house and lot, when he would not have done so if he had known that said mortgage was for $6,200; and if you further believe from the evidence that the amount paid on said deed of trust to the Mutual Building and Loan Association, together with the amount which must be paid in order to liquidate said deed of trust, exceeds the sum of $5,000; then you will find a verdict for the plaintiff, and assess his damages in the amount yet to be paid upon the surrender of plaintiff's stock in said association in excess of the sum of $5,000, ascertaining such amount by giving plaintiff credit for the amount you find from the evidence he has already paid to said association for stock and monthly dues, and deducting that amount from $5,000, and then deducting this difference from the sum that you find from the evidence it will now take to discharge said mortgage."

This instruction erroneously states the measure of damages. The plaintiff by his contract agreed to pay the balance due on the house and lot through the building and loan association. As to that part of the contract he was not deceived, and he must carry it out. If he was deceived by the defendant as to the amount necessary to pay out in the association, his right of recovery would be the difference between $3,850, the balance which under the contract he was obligated to pay, and the sum he will be required to pay until the stock matures. That would be full compensation, and it would, in our opinion, be inequitable to allow the plaintiff to recover more than this. This rule is not subject to the objection that the damages would be speculative. The uncontradicted evidence shows that it is possible to approximate the time required for the maturity of stock in a building and loan association. The evidence shows that the stock of this series in the Western Mutual Building and Loan Association will in all reasonable probability mature at the end of one hundred and five or one hundred and eight months from its date. This furnishes reliable *data* for the ascertainment of the plaintiff's damages.

There are other questions presented in the briefs, which we need not discuss. What we have said we deem sufficient to indicate the theory upon which the case should be retried. The judgment will be reversed, and the cause remanded. All the judges concur.