PAUL E. WOLFF SHIRT COMPANY, Respondent, v. JULIA FRANKENTHAL et al., Appellants.

St. Louis Court of Appeals, October 21, 1902.

1. **Witness, Competency of.** A witness is competent to testify to a conversation heard between parties to a contract, where one party is dead, and the witness is the secretary and treasurer of the other party, a corporation.

2. **Damages: LOSS TO BUSINESS.** In an action of tort, or sounding in tort, loss of profits to business that are susceptible of definite ascertainment, and which are the result of the injuries occasioned plaintiff, may be recovered.

3. **Expert Witness, When Competent.** A witness who does not qualify as to his personal knowledge of a steam plant and its connections with an engine, is incompetent as an expert witness concerning the same.

Appeal from St. Louis City Circuit Court. — *Hon. Walter B. Douglas*, Judge.

AFFIRMED.

STATEMENT.

On December 29, 1887, Alexander Frankenthal and William Goldstein were the owners of adjoining lots on Washington avenue, in the city of St. Louis, upon which each was about to erect a building. To provide steam power for these buildings they entered into a written contract whereby they agreed to put in a steam plant at their joint expense to be located partly on the prem-

ises of each and of sufficient capacity to furnish steam power for the use of both buildings, and they agreed to keep the same in permanent repair at their joint expense.  It was agreed that tenants of the Frankenthal building should pay monthly, three-fifths, and the tenants of the Goldstein building, two-fifths, of the expense of operating the plant after it was installed, including salaries of engineers and the hire of other employees.

Plaintiff, a corporation, leased the Goldstein building and had been occupying it about five years prior to the day of the trial.  In its contract of lease with Goldstein it agreed to pay, and did pay, monthly two-fifths of the expense of operating the steam plant.  Alexander and Albert Frankenthal, as partners under the firm name of Alexander Frandenthal & Brother, occupied the Frankenthal Building, superintended and operated the steam plant, rendered monthly bills of the cost of such operation to the plaintiff and collected from it two-fifths of the total expenses.

Plaintiff was engaged in the manufacture of shirts and for this purpose had an engine on the fifth floor to supply power for the running of sewing machines and a dynamo for electric lights.  Steam to run this engine was supplied by defendants from a steam boiler situated in the basements of the two buildings.  On the twenty-eighth of February, 1900, while in operation, plaintiff's engine blew up causing plaintiff damages.  It is alleged in the petition that the explosion was caused on account of the negligence of defendants in furnishing steam at an irregular pressure and at great and sudden variations of pressure, and in failing to furnish dry steam, instead thereof furnishing with the steam at intervals large quantities of water which was forced from the boilers into plaintiff's engine whereby the engine was so greatly and continuously strained and weakened that it blew up while being furnished with improper steam by defendants.

Pending the suit Alexander Frankenthal died.  His executors voluntarily entered their appearance and the suit was revived in their name.

The issues were submitted to the court without the intervention of a jury. At the request of plaintiff the court sitting as a jury made a finding of facts, which finding is as follows:

"The court finds the facts to be, that on or about the twelfth· day of ·December, 1887, an agreement·was entered into between Alexander Frankenthal, who was at the time and continued to be, until after the accident in question, the owner of the premises immediately west of the premises occupied by plaintiff, and one Goldstein, who was the owner of the premises occupied by plaintiff, in which agreement provision was made for the operation of a steam plant, which was located mainly in the Frankenthal building, for the purpose of furnishing steam to the tenants of the respective buildings, and under which agreement the tenant of, or in case the building was occupied by the owner, the owner of the Frankenthal building, should pay three-fifths of the cost of operating said steam plant, and the tenant of the Goldstein building should pay two-fifths of such cost. The plaintiff, some two years prior to the accident in question, leased from the owner of the Goldstein building said building and agreed in said lease to comply with the agreement between the said Frankenthal and Goldstein in regard to the operation of such steam plant and pay the costs thereof, and agreed to receive such steam and pay for. the same, as provided .in such agreement between Frankenthal and Goldstein. That plaintiff, for a long time prior to the accident in question, did occupy the Goldstein building, in his business of manufacturing and selling shirts at wholesale, and obtained the necessary power for· said purposes from the steam plant above mentioned.

"That steam was furnished from this steam plant to plaintiff's engine. That the same was not furnished dry, but mixed with large quantities of water. That the cause of the accident was due to this water entering plaintiff's engine in such quantities, at the time of the accident, as to cause the engine to be blown out. .That the reason why the steam was not furnished dry, but

was mixed with quantities of water, was because the engineer in charge of the steam plant was negligent in attending to said steam plant. That such engineer was employed by defendants, Alexander Frankenthal and Albert Frankenthal, who at the time, and for some time prior thereto, were co-partners and occupying the Frankenthal Building, who paid his salary and bought the necessary materials for running said steam plant. That, at the end of each month, they would furnish to plaintiff a statement of the cost of operating the plant, and that plaintiff would pay to them two-fifths of such costs. That , prior to the accident in question, plaintiff objected to defendants' continuing to employ this engineer in charge of the steam plant, and notified defendants, Alexander Frankenthal and Albert Frankenthal, that said engineer was operating said steam plant in a negligent and careless manner, and offered to take charge of the operation of said steam plant itself. The defendants refused to allow plaintiff to have any voice in the operation of the plant, or the employment of the engineer, and continued, after such objection, to employ said engineer until after the accident in question. That Albert Frankenthal knew the purposes for which said steam was being furnished, and that plaintiff's business would be seriously interfered with and damaged in case of an accident to its engine.

"That, by reason of the accident aforesaid, plaintiff was damaged as follows:

| | |
|---|---|
| Cost of repair of engine | $190.10 |
| Making connections, etc. | 8.50 |
| Hauling | 24.00 |
| Rent of motor | 75.45 |
| Four days' profit of business lost | 500.00 |
| | $798.07." |

To which finding the defendants duly objected and excepted.

The court then rendered judgment in favor of plaintiff for this sum.

In due time defendants filed a motion for new trial which was overruled, whereupon they appealed to this court.

*H. A. & H. H. Haeussler* and *C. S. Broadhead* for appellants.

(1) The second amended petition stated no cause of action, and evidence of respondent showed plaintiff had none on pleadings. Ederlin v. Judge, 36 Mo. 350; Southworth v. Lamb, 82 Mo. 242; Churchman v. Kansas City, 44 Mo. App. 665. (2) Court erred in admitting evidence of plaintiff's officers as to what passed between them and the deceased defendant. When one party to an alleged conversation or contract is dead, the other can not testify, and the fact that two of plaintiff's officers were present on one side, and deceased only on the other, does not make officers competent. Bieber v. Boekman, 70 Mo. App. 53; Kuhn v. Ins. Co., 71 Mo. App. 305. (3) Court erred in excluding evidence of W. C. Hunter as to condition of plaintiff's plant and cause of accident. A steam-fitter, above all, is competent to give evidence of the cause of such an accident. (4) Court erred in finding for plaintiff for $500 supposed profits it could have made for four days if accident had not happened, and for both repair of engine and cost of power. Churchman v. Kansas City, 44 Mo. App. 665; Sedgwick on Damages, sec. 178; Mc-Night v. Ratcliff, 44 Pa. St. 156.

*Lee W. Grant* and *Pierre B. Kennedy* for respondent.

(1) Hildebrand, not having taken part in the negotiations, is a competent witness of what took place between deceased and Wolff. It would be so even if he had been shown to be a stockholder. Banking House v. Rood, 132 Mo. 256. (2) There are cases in our appellate courts which hold that profits can not be recovered as damages for breach of contract, and also cases

which hold that profits may be recovered as damages in cases of breach of contract. As the principles of none of these cases are applicable to the case at bar, we have not cited them. Hammond v. Beeson, 112 Mo. 190. (3) As to the exclusion of certain testimony of Hunter, there could be no error in this. The question asked him was what was necessary to be done to the plant to prevent such an accident. The witness had already shown his ignorance both in regard to Wolff's plant and as to the causes of the accident. He had been asked what was the cause of the accident and had stated that he did not know; that there might be a half a dozen causes; that it might be for lack of a separator. He was then asked if there was a separator in Wolff's plant, to which he answered he did not know.

BLAND, P. J.—1. Appellants contend that the steam plant was operated as the joint enterprise of appellants and respondent. The contract referred to between Alexander Frankenthal and William Goldstein does not specifically state which of the parties shall superintend the operation of the steam plant. From the nature of the contract and its terms the inference is that its operation was to be under their mutual and joint supervision. But it is nowhere provided in the contract that the tenant or tenants of either party should have any voice in superintending or running the steam plant. As to them (the tenants) the only provision of the contract is that they shall pay monthly the agreed proportion of the operating expenses.

The evidence is, and the trial court found as a fact, that the supervision of the operation of the plant was under the sole control of the appellants and we rule this contention against the appellants.

2. Appellants assign as error the admission of the evidence of Hildebrand, respondent's secretary and treasurer, in regard to a conversation he testified he heard between A. F. Wolff, president of respondent company, and Alexander Frankenthal, in respect to the quality of the steam being furnished to the respondent,

on the ground that Hildebrand was an incompetent witness, Frankenthal being dead. The conversation testified to by Hildebrand tended to prove that Wolff made complaint to Frankenthal about the quality of the steam and the manner in which it was being furnished to respondent and of an offer on the part of Wolff to take charge of the steam plant and to run it properly; that to this proposition Frankenthal said to Wolff that the engineer in charge had run the plant for a long time; that he was a competent engineer and he saw no reason for making a change. Hildebrand took no part in the conversation. He said nothing, and nothing was addressed to him by either Wolff or Frankenthal and we know of no statute or rule that would make him incompetent as a witness to testify to this conversation on the ground that he was an officer of the respondent company.

3. It is assigned as error that the evidence of Wolff as to the damage sustained on account of loss of profits in business should have been excluded. On this issue Wolff testified as follows:

"Q. What was damage to your loss of trade? What shirts could you manufacture?

"Objected to by defendants, as remote and speculative.

"Objection overruled and exception taken.

"A. In four days we could manufacture 600 dozen shirts; the average price we find out, during four years in business, is about $8 a dozen.

"Q. What would the profit be?

"Again objection made and overruled, and exception.

"A. Net profit would be between five and six hundred dollars."

The objection was not to the character or competency of the evidence to prove damages, but to the admissibility of any evidence to prove damages on account of the loss of profits in business on the ground that such profits are not recoverable in this character of action. The objection raised the question as to

whether or not loss of profits in business constitute an element of damages in cases of this character. This question was recently before this court in the case of Gildersleeve v. Overstolz, 90 Mo. App. 518, and was so exhaustively discussed by GOODE, J., that a further discussion of the subject is not called for here. The conclusion reached in the Gildersleeve case (abundantly supported by the authorities cited in the opinion) was that in actions of tort, or sounding in tort, loss of profits to business that are susceptible of definite ascertainment which were the direct result of the injury, might be recovered by the injured party.

4. Appellants allege as error the ruling of the trial court in excluding the evidence of the witness Hunter. Hunter was offered as an expert. He testified that he was a steam-fitter with twenty years' experience but that he was not an engineer; that he did not know the cause of the explosion; that there might be a half dozen causes; that it might have been for the lack of a separator but did not know whether there was a separator or not; that if the plant was not properly piped he could tell it; that in supplying and putting up steam plants, such as plaintiff's, he put them up and saw that they were properly operated.

This question was asked the witness.

"Q. What would be necessary to be done to that plant so as to catch the condensed steam and prevent such an accident that did occur, and prevent the water going into and blowing that up?"

Respondent objected to the question on the ground that the witness had not qualified himself to answer the question, which objection was sustained and an exception saved by appellants.

We do not think that the witness showed that he had had such experience in running plants of the kind in question as to qualify him to answer the question propounded. He did qualify as a steam-fitter but not as an operator of steam plants, nor was the question one which he could intelligently answer. To answer the question the witness must have had personal knowledge

of the plant and its connections with respondent's engine, this knowledge he testified he did not have. We think the objection was properly sustained.

The finding of the facts by the learned trial judge is supported by the evidence and the facts as found warrant the judgment rendered.

Discovering no reversible error in the record the judgment is affirmed. *Barclay* and *Goode, JJ.,* concur.