# MARY J. SLOAN, Respondent, v. FREDERICK W. PARAMORE, Appellant.

**St. Louis Court of Appeals, March 3, 1914.**

1. **STATUTE OF FRAUDS: Contracts not Within Statute: Contract to Share Profits in Purchase and Sale of Real Estate.** A contract whereby a mortgagor of real estate agreed to forego her right to redeem, in consideration of defendant's promise to purchase at the trustee's sale and share the profits equally upon a resale, not being a contract for the sale or transfer of any interest in the land, but only in the profits of a resale, was not within the Statute of Frauds.

2. ———: ———: **Full Performance of Contract.** Full performance of a contract within the Statute of Frauds will remove it from the operation of the statute, so that, even though a contract whereby a mortgagor of real estate agreed to forego her right to redeem, in consideration of defendant's promise to purchase at the trustee's sale and share the profits equally upon a resale, were within the Statute of Frauds, yet where the mortgagor made no effort to redeem, but permitted the property to be sold, relying upon the agreement, the contract would be removed from the operation of the statute.

3. **DAMAGES: Measure of Damages: Breach of Contract.** Where two parties have made a contract which one of them has broken, the measure of damages is such as may fairly and reasonably be considered as arising naturally from the breach, i. e., according to the usual course of things, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as a probable result of the breach of it.

4. ———: **Recoverable Elements: Profits.** Probable profits in a business form a legitimate element of damages, where their extent can be shown with reasonable certainty, but not where they are purely speculative, contingent or conjectural; and this rule obtains in actions for damages on account of a tort committed with respect to a business or occupation.

5. ———: **Measure of Damages: Breach of Contract for Purchase and Sale of Land.** In an action for the breach of a contract whereby a mortgagor of real property agreed to forego her right to redeem, in consideration of defendant's promise to purchase at the trustee's sale and share the profits equally upon a resale, the measure of damages was the difference between

the amount of the incumbrance and the reasonable market value of the property, and not the value of the prospective profits, since the former was the loss that naturally flowed from the breach and such as must have been contemplated by the parties when they entered into the contract, and since also the damages could not be measured by the value of the prospective profits, in view of the fact that they were too indefinite for ascertainment.

Appeal from St. Louis City Circuit Court.—*Hon. James E. Withrow*, Judge.

AFFIRMED.

*E. W. Banister* for appellant.

(1) An agreement to purchase real estate is as much within the Statute of Frauds as an agreement to sell it. Brown on Statute of Frauds, Sec. 263; Schlanker v. Smith, 27 Mo. App. 516; Culligan v. Wingerter, 57 Mo. 241. And if suit for specific performance cannot be maintained neither can a suit for damages for a breach of the contract. Culligan v. Wengerter, 57 Mo. 241; Andrews v. Braughton, 78 Mo. App. 179; Lydick v. Holland, 83 Mo. 703. (2) The court misdirected the jury as to the measure of damages in the case. The pleadings and uncontradicted evidence show that the contract was that in case appellant purchased the property in question respondent should receive one-half of the profits realized on its resale. Assuming then that respondent was entitled to recover, she could have judgment for one-half only of such profits as would have been realized from a sale of the property. 1 Story on Equity (13 Ed.), p. 672, Sec. 665; 8 Am. & Eng. Ency. of Law, page 632; Tinsley v. Jenerson et al., 74 Fed. 177; Jack v. McKee, 9 Pa. St. 235; Baeb v. Baeb, 9 Pa. St. 260; Taylor v. Bradley, 39 N. Y. 129; Hoyt v. Grenoble, 34 Pa. St. 9; Bush v. Chapman, 2 Greene (Iowa) 549. By the first instruction given by the court at the request of the defendant the court

properly declared the law as to the measure of damages; but by the second instruction, given at the request of the plaintiff, the court in effect told the jury that if they found for the respondent she was entitled to all the profits. Where contradictory instructions are given the jury will be conclusively presumed to have followed the erroneous instruction and the judgment will be reversed. Russell v. Poor, 133 Mo. App. 723; Ross v. Metropolitan Street Ry. Co., 132 Mo. 472; Sheperd v. St. Louis Transit Co., 189 Mo. 362; Mansur, etc., Imp. Co. v. Ritchie, 143 Mo. 587; Mining Co. v. Fidelity, etc., Co., 161 Mo. App. 185; Sublette v. Lowe, 152 Mo. App. 186; Butz v. Construction Co., 137 Mo. App. 228. (3) There was no consideration to support the oral contract relied on by respondent.

*L. Frank Ottofy* for respondent.

(1) Agreements to share profits and losses arising from the purchase and sale of real estate are not contracts for the sale or transfer of interest in land and need not be in writing. 20 Cyc., p. 237; Browne on Statute of Frauds (5 Ed.), Sec. 261g; Wiedemann v. Crawford, 134 S. W. 495; Van Trotha v. Bamberger, 15 Colo. 1; Snyder v. Wolford, 22 N. W. 254; Benjamin v. Zell, 100 Pa. St. 33; Morrill v. Colehour, 82 Ill. 626. (2) The agreement between plaintiff and defendant was for a present partnership and not for one to begin in the future, hence it is not within the Statute of Frauds. Browne on Statute of Frauds (5 Ed.), Sec. 262; 29 Am. and Eng. Ency. of Law (2 Ed.), p. 898, Note 1; McNealy v. Bartlett, 123 Mo. App. 58; Hill v. Palmer, 56 Wis. 123; Treat et al. v. Hiles, 68 Wis. 344; Speyer v. Desjardins, 144 Ill. 648; Kayser v. Maugham, 8 Colo. 232; Goldstein v. Nathan, 158 Ill. 646. (3) The contract was founded on a valid consideration, the defendant was to share profits, a benefit which was accruing to him because plaintiff did not after the agree-

ment protect the property at the sale and hence her loss. Bishop on Contracts, Sec. 481; German v. Gilbert, 83 Mo. App. 411; Phippen v. Stickney, 44 Mass. (3 Metc.) 384; Hunt v. Elliott, 80 Ind. 245; Underwood Typewriter Co. v. Realty Co., 118 Mo. App. 202; Hartzell v. Saunders et al., 49 Mo. 434; Scriba v. Neely, 130 Mo. App. 258; Little v. McCarter, 89 N. C. 233. (4) The instructions on the measure of damages clearly state that plaintiff was only entitled to recover one-half of the damages and, taking them as a whole, could not possibly have misled the jury. But in truth plaintiff was entitled to recover the entire damages, hence, the giving of the instructions for defendant was an error in his favor, of which he cannot complain. 2 Story's Eq. Juris., Sec. 665; McNeil v. Reid, 9 Bing. 68; Hill v. Palmer, 56 Wis. 123; Hyer v. Richmond Traction Co., 168 U. S. 471.

NORTONI, J.—This is a suit for damages accrued to plaintiff through the breach of a contract of partnership to share the profits in land. Plaintiff recovered and defendant prosecutes the appeal.

It appears plaintiff owned a certain lot of land in the city of St. Louis, situate at the southeast corner of Eugenia and Twenty-first streets, together with the building thereon. The property was encumbered by a deed of trust in favor of Nicholls, trustee, for the principal sum of $16,000. Considerable interest had accumulated on the deed of trust and, indeed, the note therein secured was more than a year past due and the condition therefor broken. The entire amount due on the note and interest secured by the deed of trust was $17,174. Besides this, there were then due on the property taxes to the amount of about $1200. The property had a rental value of $1624 a year. Plaintiff owned the legal title to the property, but conveyed it to Nicholls, the trustee, for the purpose of securing the loan thereon, and by the terms of the deed of trust,

she likewise surrendered the possession thereof to
Nicholls and continued to occupy the property herself
as his tenant at an agreed rental of one cent per month.
The owner of the note desiring his money, insisted
upon payment and plaintiff went about the matter of
negotiating a new loan on the premises. At first de-
fendant agreed to loan her $18,000 thereon, but upon
examining the title, he declined to consummate this
loan, but it is said agreed to buy the property in at
the trustee's sale. The property was advertised for
sale by Nicholls, the trustee, at the courthouse door in
St. Louis on November 17th.

The evidence tends to prove, and the jury so found
the fact to be, that defendant verbally agreed with
plaintiff that he would attend the trustee's sale and
buy the property in, provided it did not sell for more
than $18,000, and that the parties would "be partners"
in the profits which might be realized on a re-sale of
the same. In other words, defendant agreed to bid
enough on the property at the trustee's sale to pay off
the mortgage, including the interest, of $17,174 and if
need be bid as high as $18,000 for the property and
take title thereto in himself. Thereafter the property
should be sold and he, defendant, and plaintiff divide
the profits realized on such re-sale, after deducting the
amount of defendant's investment. Two days there-
after, November 17th, defendant attended the sale, but
made no bid on the property whatever. The property
was sold under the deed of trust and purchased by
another at the price of $17,175, or one dollar more than
the amount necessary to pay the note and interest
against it. Defendant says that, while he agreed to
buy the property, he agreed to bid only the amount of
the mortgage—that is, $17,174—and that he omitted to
buy it because another bid more than such amount. The
evidence concerning the value of the property varies.
For defendant, one witness says it was worth from
twenty-one to twenty-two thousand dollars, while oth-

ers value it higher still.  For plaintiff, the evidence
tends to prove the value of the property at the time
was from twenty-five to thirty thousand dollars.

It is argued that, as the agreement between the
parties was in parol, the court should have directed a
verdict for defendant because of the Statute of Frauds.
The argument is that, as the statute applies to the
purchase as well as sale of real property, plaintiff
should not be entitled to recover, in the absence of an
agreement in writing between her and defendant touch-
ing the same.  It is clear that the instant case is not
within the statute, for the suit proceeds on a breach
of a contract of partnership between the parties, where-
by they were to share the profits arising from the sale
of land.  Here, though plaintiff owned an equity—
that is, a right of redemption—she was to forego that
entirely, and this, too, without acquiring any interest
whatever in the land through the sale that was made.
By the agreement she was to become entitled to share
the profits realized by a resale of the property on the
part of defendant after he had acquired the title from
the trustee.  Though the defendant was to acquire the
title to the land, the agreement obviously contemplated
no more than a sharing of the profits to be realized.  If
no profits were made, then the parties took nothing,
save defendant held the land to compensate his invest-
ment, and it may be that both would suffer loss.

Cyc., Vol. 20, p. 237 thus states the rule with re-
spect to such sharing of profits:  "It is generally held
that agreements to share profits and losses arising from
the purchase and sale of real estate are not contracts
for the sale or transfer of interests in land and need
not be in writing."

Mr. Browne, in his work on the Statute of Frauds
(5 Ed.), Sec. 263a says:  "When, for instance, the de-
fendant promises the plaintiff to buy land for himself
—the plaintiff, whatever his advantage from having
the defendant make the purchase, acquiring no inter-

est in land,—the contract does not appear to be within the policy of the statute.''

The Supreme Court of Pennsylvania says, ''An interest in contingent profits, arising from a sale of real estate, to be made thereafter, does not amount to an interest in the land itself, within the meaning of the Statute of Frauds.'' [Benjamin v. Zell, 100 Pa. St. 33. See, also, to the same effect Snyder v. Wolford (Minn.) 22 N. W. 254.] In the case last cited, the court, speaking of the transaction says, ''It manifestly did not contemplate that plaintiff should have any estate or interest in the land, or be interested in any way in the transaction, unless upon a sale there should be a profit, and then only in the profit, and to the extent of one-half thereof.'' [See, also, Vaught v. Hogue, 32 Ky. Law 1061, 107 S. W. 757; see also Wiedemann v. Crawford (Ky.), 134 S. W. 495.]

Here, plaintiff asserts no interest in the land because of the contract, nor does she pursue defendant because he refused to take the land as such, but rather for that he breached his contract to launch a partnership with her with a view of realizing profits which she should share equally with him and which breach entailed the loss of the partnership funds contributed by her toward the launching of the partnership. On such a state of facts the Statute of Frauds is without avail. Moreover, even if the contract were within the Statute of Frauds, full performance on the part of plaintiff removed it therefrom in the instant case. It appears she relied upon the contract with defendant and made no effort to obtain a loan on the property, but permitted it to be sold, so that he might purchase it under the agreement. In this she fully performed all of the conditions imposed upon her part and such removes the case from the operation of the statute entirely. [See Root v. Burt, 118 Mass. 521; Cape Girardeau, etc. R. Co. v. Wingerter, 124 Mo. App. 426, 101 S. W. 1113; Chenoweth v. Pacific Express Co., 93

Mo. App. 185; Bless v. Jenkins, 129 Mo. 647, 657, 31 S. W. 938.]

The evidence shows there was $17,174 encumbrance on the property—that is, the note and interest against it and about $1200 taxes. There is nothing whatever tending to prove the probable profits that might be realized on a re-sale of the property, but both parties introduced evidence touching the value of the equity of redemption, which plaintiff lost by virtue of the trustee's sale under the mortgage. On the measure of damages, the court instructed the jury that if the issue be found for plaintiff, they should assess her damages at such a sum as appeared from the evidence to be the difference between the amount of the encumbrance, including interest and taxes, and the reasonable market value of the property, on the date of the sale, November 17, 1909. It is argued this instruction was error, for it is said it permitted plaintiff to recover the value of her property, without regard to the bargain revealed in the contract between the parties, which, at most, entitled plaintiff to but one-half of the profits to be realized on a re-sale. It is urged that, in a suit on a contract and for its breach, the law intends to compensate only for the benefits of the bargain of which defendant's breach deprived plaintiff. There can be no doubt that such is the general rule, but there are cases revealing variations therefrom where it sufficiently appears the damages suffered were essentially within the contemplation of the parties as a natural sequence from the breach at the time the contract was made. The contract here declared upon stipulated for an equal division of the profits realized on a re-sale of the property, and by its terms plaintiff was to perform her part through permitting the property to be sold at trustee's sale and defendant to purchase it there at a price not exceeding $18,000. After the purchase, a re-sale was to be made and the profits divided between the parties. Plaintiff relied upon de-

fendant's promise and permitted the property to be sold, whereby she lost her equity of redemption entirely. This being true, it appears that the loss she sustained was the value of the equity of redemption, precisely as declared by the court in the instruction, and it is clear that the parties must have had this in contemplation as the result of such a breach at the time the contract was entered into. Defendant knew plaintiff was without means to pay off the encumbrance, and the record reveals that she discontinued her efforts to procure a new loan on the property on the faith of his promise to buy it in at the trustee's sale, resell it, and divide the profits with her. It is clear that no profits were made and that none were possible under the contract declared upon, because of the wrongful act of defendant in breaching it at the time and in the manner stated. The case is one, too, in which it is impossible to show the probable profits which might be realized with that degree of certainty required by the law, and if plaintiff should sue for the profits— that is, the benefits of the bargain assured by the contract alone—a recovery for more than nominal damages should be denied because the contemplated profits were purely contingent and conjectural, and this, too, though plaintiff actually sustained a substantial loss in relying on defendant's promise. It is certain that the loss sustained by plaintiff equaled the difference between the encumbrance, including interest, together with taxes, and the value of the property on the day of the sale.

Whatever may be said of the rules for the admeasurement of damages, it is fundamental that the idea involved therein is to compensate the loss sustained. [See Nicholas v. Kelley, 159 Mo. App. 20, 139 S. W. 248.] Here, the suit does not proceed on the theory that plaintiff is to be compensated on the basis of probable profits to be realized, for it seems to recognize the difficulty to be encountered in endeavoring to show such

profits, which, in the instant case, must be essentially conjectural. Therefore, the petition counts upon the contract and its breach and prays that plaintiff be compensated for her loss sustained without any mention of probable profits. There can be no doubt that all rules for the admeasurement of damages in suits for a breach of contract converge in that announced in Hadley v. Baxendale, 9 Exch. 341, 353. The rule there stated is, that ''Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered, either arising naturally, i. e., according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it.'' There can be no doubt that the rule of Hadley v. Baxendale, besides authorizing the recovery of such damages as normally result from the breach of the contract, authorizes, in addition, the recovery of such damages as may fairly be supposed to have entered into the contemplation of the parties when they made the contract—that is, such damages as might naturally be expected by them to follow the breach in the particular case. [See 1 Sedgwick on Damages (9 Ed.), Sec. 146; Griffin v. Colver 16 N. Y. 489, 69 Am. Dec. 718, n.; 8 Am. & Eng. Encyc. Law. (2 Ed.), 584; Trout v. Watkins Livery, etc. Co., 148 Mo. App. 621, 130 S. W. 136.]

The full scope of this rule has long been recognized in this State, as will appear by a study of the case of Clark v. Marshall et al., 34 Mo. 429. There, the defendants, abstractors, undertook to furnish plaintiffs, who were probable purchasers thereof, with information concerning the number of feet remaining unsold in Kingsbury's Addition to St. Louis. The abstractors reported that 1200 feet of the property re-

mained unsold, when in fact it had all been sold save 975 feet. The plaintiffs, relying upon defendant's undertaking, purchased the property, on the basis of the report received from the defendants, abstractors. Having obtained but 975 feet at the purchase, when they supposed they were purchasing 1200 feet of the ground, plaintiffs sued the defendants for a breach of their contract, in that they had relied upon the report and been mislead to their damage thereby. The court permitted the plaintiffs to recover "the value of the deficit of 225 feet at the price per foot the plaintiffs paid for said purchase, i. e., in the following proportion: as 1200 feet is to $2000, so is 225 feet to the amount for which defendants are liable." Though the precise phase of the rule of Hadley v. Baxendale is not discussed in the opinion, it is obvious this recovery was allowed on the theory that the damage recovered not only resulted normally from the breach of the contract, but must have been within the contemplation of the parties at the time it was made as resulting from a probable breach of defendants' duty thereunder. That case seems to have reckoned with the consideration money of which the plaintiffs were deprived through the defendants' breach of the contract as the proper measure of recovery, in the absence of a better criterion appearing, for that it is the theory of the law to compensate the loss sustained if it appears to be one supposed to have been within the contemplation of the parties when the contract was made.

Other cases in our Supreme Court reflect the same principle, as will appear by reference to Moore v. Mountcastle, 72 Mo. 605. There the plaintiff and the defendant entered into a contract in Tennessee whereby the plaintiff undertook to come to Cass county, Missouri, and improve and cultivate the defendant's farm for five years, under an arrangement whereby the profits of the venture were to be shared. After the plaintiff journeyed from Tennessee to Missouri,

and incurred considerable expense toward undertaking performance on his part, the defendant breached the contract and refused to permit the plaintiff to proceed. The Supreme Court, in a suit for the breach, permitted the plaintiff to recover the expenses thus incurred, including his loss of time from the 20th day of March to the 20th day of May, 1871, at $60 per month, and in making the trip from Tennessee to Missouri. The court said these were such damages as may be presumed necessarily to have resulted from the breach of the contract.

So, too, in the case of Hammond v. Beeson, 112 Mo. 190, 20 S. W. 474, it appeared the plaintiff had contracted to perform certain services with teams and workmen for the defendant. The plaintiff prepared to proceed with the work, incurred expenses thereabout and was kept in idleness for a few days, when the defendant breached the undertaking. The court declared the plaintiff was entitled to recover for all of these expenses incurred and the time lost on the faith of the defendant's promise, and that this right obtained in addition and even separate and apart from his right to recover the probable profits on executing the contract. [See, also, Ragland v. Conqueror Zinc Co., 136 Mo. App. 631, 118 S. W. 1194.]

In the same view Mr. Sedgwick, in his work on Damages, Vol. 2 (9 Ed.), Sec. 616 says, if the plaintiff cannot or does not prove that any profits would have been earned by a full performance, he may nevertheless recover the expense of the partial performance.

The principle under consideration is not only illustrated but strikingly developed by a great master of the law in the case of United States v. Behan, 110 U. S. 338, 28 L. Ed. 168, 4 Sup. Ct. 81. Mr. Sedgwick, in his work on Damages (9 Ed.), Vol. 2, Sec. 616, gives the following synopsis of that case:

"In this case the claimant was the surety for one Roy upon a contract between Roy and the United States

to improve the harbor of New Orleans, and later, upon the contract with Roy being annulled, the claimant was authorized to fulfill the contract. He went to expense in providing machinery and materials and did a portion of the work and after this part performance the government finally cancelled the contract. The claimant thereupon sold the materials on hand. The Court of Claims allowed him for his actual expenditures in the prosecution of the work together with the unavoidable losses on materials. It did not appear whether a profit would have been made or not by a performance of the contract. The government appealed on the ground that by making a claim for profits the claimant asserted the existence of the contract and could recover only nominal damages if he was unable to show that a profit would have been made. The Supreme Court, however, speaking by Justice Bradley, affirmed the decision of the Court of Claims on the ground that in a case of this sort the claimant should at least be made whole for his losses even though he did not prove what the profits of the contract would be.

" 'The prima-facie measure of damages for the breach of a contract is the amount of the loss which the injured party has sustained thereby. If the breach consists in preventing the performance of the contract, without the fault of the other party, who is willing to perform it, the loss of the latter will consist of two distinct items or grounds of damage, namely: first, what he has already expended toward performance (less the value of materials on hand); secondly, the profits that he would realize by performing the whole contract. The second item, profits, cannot always be recovered. They may be too remote and speculative in their character, and therefore incapable of that clear and direct proof which the law requires. But when, in the language of Chief Justice NELSON, in the case of Masterson v. Mayor of Brooklyn, they are "the direct and immediate fruits of the contract," they are

free from this objection; they are then "part and parcel of the contract itself, entering into and constituting a portion of its very elements; something stipulated for, the right to the enjoyment of which is just as clear and plain as to the fulfillment of any other stipulation." Still in order to furnish a ground of recovery in damages, they must be proved. If not proved, or if they are of such a remote and speculative character that they cannot be legally proved, the party is confined to his loss of actual outlay and expense. This loss, however, he is clearly entitled to recover in all cases, unless the other party, who has voluntarily stopped the performance of the contract, can show the contrary.

" 'The rule as stated in Speed's case is only one aspect of the general rule. It is the rule as applicable to a particular case. As before stated, the primary measure of damages is the amount of the party's loss; and this loss, as we have seen, may consist of two heads or classes of damages—actual outlay and anticipated profits. But failure to prove profits will not prevent the party from recovering his losses for actual outlay and expenditure. If he goes also for profits, then the rule applies as laid down in Speed's case, and his profits will be measured by "the difference between the cost of doing the work and what he was to receive for it," etc. The claimant was not bound to go for profits, even though he counted for them in his petition. He might stop upon showing of losses. The two heads of damage are distinct, though closely related. When profits are sought, a recovery for outlay is included and something more. That something more is the profits. If the outlay equals or exceeds the amount to be received, of course there can be no profits.' "

Further on in the opinion in that case, Justice Bradley invokes the principle of estoppel, and points out that it does not lie in the mouth of a defendant

who has thus wrongfully put an end to the contract to say that the party relying upon his promise has not bn damaged, at least to the amount which he has been induced fairly and in good faith to lay out and expend toward performing his undertaking. [See U. S. v. Behan, 110 U. S. 338, 345.] The principle is pertinent here, for, after inducing this plaintiff to permit her equity of redemption to be sold on the faith of his promise to buy it and divide the profits on a resale, defendant ought not to be heard to say that she may have no recovery notwithstanding her loss, for the reason no probable profits were shown and none could be with sufficient clearness to entitle her to recover. It would seem that the principle reflected in the authorities above cited alone is sufficient to authorize a recovery under the measure of damages given to the jury in the instant case, when the facts and circumstances peculiar to it are considered, for, obviously, the precepts of natural justice assure to plaintiff the right to have her loss compensated—that is, in substantial form and something more than a nominal recovery, it appearing, as it does, that but for the act of defendant she would, no doubt, either have retained her equity or have realized some profits, which he says may not be recovered on the contract for that they were incapable of proof in accordance with the requirements of the law.

Probable profits in a business form a legitimate element of damages, where their extent can be shown with reasonable certainty. [Stewart v. Patton, 65 Mo. App. 21; Manter v. Truesdale, 57 Mo. App. 435; Howard v. Stillwell and Bierce Mfg. Co., 139 U. S. 199.] But though such be true, where such profits are purely speculative, contingent and conjectural, no recovery can be had with respect to them. [See Taylor v. Maguire, 12 Mo. 313; Callaway Min., etc. Co. v. Clark, 32 Mo. 305; Stewart v. Patton, 65 Mo. App. 21, 65.] The

181 App. 40

rule is the same in actions for damages on account of a tort committed on one's business or occupation. [See Gildersleeve v. Overstolz, 90 Mo. App. 518; Wolff Shirt Co. v. Frankenthal, 96 Mo. App. 307, 70 S. W. 378.] But where no business has been conducted whatever under the contract and no profit has ever been realized, the question pertaining to probable profits to be yielded from the venture is enveloped in uncertainty. Therefore, Mr. Sedgwick says the mere loss of an opportunity to try to make a profit is of too uncertain value to be compensated in an action for damages. [1 Sedgwick on Damages (9 Ed.), Sec. 193.] Such is the case here. The loss of one-half of the contemplated profits on a re-sale of the property is the mere loss of an opportunity to try to make a profit and therefore purely conjectural. In this view, plaintiff would be entitled to no recovery whatever, save nominal damages, if she is confined to the benefits of the bargain contracted for without regard to the element of loss revealed which occurred through her reliance in good faith upon the promise of defendant. Such a recovery in such a case would not only impinge the most elementary principles of natural justice but would run counter as well to the rule of law requiring a defendant to compensate such loss as he would have reasonably contemplated as resulting from the breach at the time the contract was made.

The instant case affords cogent reasons, and the law ample remedy, for compensating the amount contributed by plaintiff to the venture, which, but for dedefendant's breach, might have yielded a profit. The case is at least analogous to, if not one of, those which proceed for a breach of a contract to launch a partnership. Judge Story, in his Equity Jurisprudence, says, in speaking of cases of this character—that is, suits for the breach of an agreement to launch a partnership—that an action will lie at law for damages therein for that the transaction is not so much a partner-

ship transaction as an agreement to launch a partnership. Such an agreement is an individual engagement of each partner. Therefore, the author says, "For the breach of such an agreement there seems to be no reasonable objection to the maintenance of a suit at law. But what should be the measure of the damages must depend upon the circumstances of each particular case." [1 Story Eq. Jur., Sec. 665. See, also, Wachter v. Heman, 82 Mo. App. 243.] In this view, the courts declare that, as no partnership business has been transacted before the breach occurs, then, of course, there is no necessity for an accounting in equity, and the damages suffered belong to the party injured. [See Hill v. Palmer, 56 Wis. 123.] Here, no business was transacted and nothing was done toward carrying out the contract of partnership because of the defendant's default, save that plaintiff contributed, in accordance with the agreement, her equity of redemption and lost it. Under the rule of damages given by the court, the jury found this equity of redemption to be of the value of $4500 and accordingly awarded a verdict in favor of plaintiff for that amount. There is an abundance of authority to support this rule of compensation in similar cases, as will be pointed out.

The case of Gale v. Leckie, 2 Starkie Rep. 107, is similar to this one, in that it was a suit on a contract and for damages because of its breach between the parties, who were to divide the profits pertaining to a book to be printed. The plaintiff was a printer and the defendant agreed to prepare manuscript of a book entitled "An Historical Inquiry into the Balance of Power in Europe," to be printed by the plaintiff. The work was to be published at the expense of the plaintiff and the profits divided between the author and the publishers. Manuscript was furnished by defendant, and plaintiff proceeded with the printing until 336 pages were completed, when the defendant declined to sup-

ply further materials, fearing that he might be excommunicated by the Pope. Lord Ellenborough said it was clear that the plaintiff was entitled to recover the expense incurred in paper and in printing. Touching this matter, he said, "It is a waste of time to say, that to this they are entitled in the strictest justice."

In Skinner v. Tinker, 34 Barb. (N. Y.) 333, it appeared the plaintiff was a dentist pursuing his profession in Brooklyn and defendant a dentist practicing at Havana, Cuba. The parties agreed to enter into a partnership for the practice of dentistry at Havana, to begin some time in October or November thereafter. Here is a plain contract to launch a partnership and, relying upon it, the plaintiff sold his business in Brooklyn and executed a bond not to further practice his profession there. Shortly thereafter he was notified by defendant that he would not consummate the agreement and enter into the partnership with him in Cuba. In a suit for the breach of the contract the jury awarded the plaintiff a recovery of $4000, and this was affirmed on appeal, though nothing whatever appeared tending to show the value of the bargain. The court declared the plaintiff was entitled to such damages as he had sustained up to the time the contract to launch the partnership was breached by the defendant in Cuba writing the plaintiff that he would not keep the obligation. The court said, too, the plaintiff was not entitled to prospective damages —that is, in that case, damages which might ensue after the breach.

The case of Eastman v. Dunn, — R. I. —, 83 Atl. 1057 presents a striking similarity to this one. There, the plaintiff was the holder of an option for a twenty-year lease with the option of purchase of a piece of ground whereon he hoped to erect a moving picture theater at a cost of $10,000. Failing to secure the necessary funds to erect the theater, he commenced negotiations with the defendants, a few days before the option expired, to take it over. The agreement was

that the defendants should take the lease in their own names, that they were to be paid the moneys advanced for the erection of the building, that thereafter they should all share equally in the profits and the income from the building, and that plaintiff would guarantee that he would repay defendants at the rate of $5000 per year or forfeit all of his interest in it. A formal written agreement was never executed. The defendants commenced the excavation for the building and abandoned the project. The plaintiff, therefore, lost his option and rights thereunder. He sued on the contract and for its breach, seeking to recover the present value of the option, that being his loss occasioned by defendants' default, and also sued for labor and services performed. The court declared the case to be analogous to an agreement for a future partnership in and about the project. It was urged, on the part of defendants, that plaintiff was entitled to recover only what he would have been entitled to if the contract had been carried out. The court declared, on the measure of damages, that, in the circumstances of the case, which it regarded as analogous to the breach of a contract to launch a partnership, the plaintiff was entitled to recover the value of the option so surrendered by him on the faith of defendants' promise and which would have entered into the partnership estate but for their breach of the contract. In other words, that he was to be compensated for the loss entailed in performing his part while relying upon the promise of defendants, and sustained a verdict of $18,000 to that effect.

Other partnership cases reflecting the same principle are as follows: Ball v. Britton, 58 Tex. 57; McNeill v. Reid, 9 Bing. 68; Reiter v. Morton, 96 Pa. St. 229; see also Nurse v. Barns, T. Raym. 77.

The instruction was proper in the circumstances of the case and the judgment should be affirmed. It is so ordered. *Reynolds, P. J.*, and *Allen, J.*, concur.